# Order

**Michigan Supreme Court**
**Lansing, Michigan**

August 6, 2009

138351

PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff-Appellant,

v

RANDALL LEE DOWDY,
Defendant-Appellee.

_____/

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

SC: 138351
COA: 287689
Ingham CC: 08-000249-FH

On order of the Court, the application for leave to appeal the February 12, 2009 order of the Court of Appeals is considered and, pursuant to MCR 7.302(H)(1), in lieu of granting leave to appeal, we REMAND this case to the Court of Appeals for consideration as on leave granted.

KELLY, C.J. (*concurring*).

I concur in this Court's order remanding the case to the Court of Appeals for consideration as on leave granted because there is no published caselaw governing the unusual factual circumstances presented. Justice Young generously puts forth a blueprint showing how the Court of Appeals could decide the matter. But, I question whether the pertinent section of the Sex Offenders Registration Act[1] (SORA) can be applied to defendant given that he was unable to register a residence. A person cannot be criminally liable for failing to do an act that he or she is incapable of performing.[2] Therefore, it appears that the circuit court may have properly dismissed the charges against defendant.

Defendant was convicted of crimes that required him to register and report under SORA. Upon his release from prison, he resided at the Volunteers of America (VOA) shelter in Lansing. He properly registered the VOA shelter address through the

_____

[1] MCL 28.721 *et seq.*

[2] *City of Port Huron v Jenkinson*, 77 Mich 414, 419 (1889). See also *United States v Dalton,* 960 F2d 121 (CA 10, 1992); *United States v Spingola,* 464 F2d 909 (CA 7, 1972).

Department of Corrections before his release from prison.[3]  After living at the VOA for about four years, defendant was told that he could no longer stay there because of the shelter's policy to refuse services to convicted sex offenders.

Because defendant registered no other address, he was charged with four counts of violating SORA: (1) one count of failing to register (a felony),[4] (2) two counts of failing to comply with reporting duties (a misdemeanor),[5] and (3) one count of refusing or failing to pay a registration fee (a misdemeanor).[6]  The district court bound him over for trial as charged.  The circuit court determined that it was impossible for defendant to comply with the SORA requirements and dismissed the charges.  Because all four charges against defendant have a willfulness requirement, he cannot be guilty of any of them unless he acted willfully.

---

[3] Justice Young is incorrect that defendant "falsely provided the address of the soup kitchen where he ate meals but did not reside."  Defendant resided at the VOA shelter for four years after being released from prison, until he was told he could longer stay there.  The prosecutor has clearly stated in his brief before this Court and the Court of Appeals that defendant resided at the VOA.  The lower court record supports this.  For example, a VOA employee testified that defendant received services at the shelter until they discovered he was a registered sex offender, at which point he "no longer stayed at the VOA."  As another example: the district court stated that defendant had until December 10 to report his new address.  SORA gives a defendant 10 days to register a change of address.  Defendant was required to leave the VOA at some time in November.  The December 10 date is meaningless unless defendant was residing at the VOA 10 days before then.  The district court based the December 10 date on an assumption that defendant left his VOA residence on the last day of November.  All the parties in this case were operating under the assumption that defendant resided at the VOA until November of 2006.

Defendant did not "initially register[]" a false address.  He was charged in this case because the VOA address, which was at one time valid for SORA purposes, ceased to be his residence in November 2006 and he failed to register a *new* address.

[4] MCL 28.729(1)(a).

[5] MCL 28.729(2)(a).

[6] MCL 28.729(4).  Defendant was charged with this misdemeanor even though the registration fee is waived if an individual is indigent.  MCL 28.725b.  Justice Young claims that the charges brought against defendant are premised on the fact that he did not comply with the quarterly reporting requirements of SORA.  This is only partially accurate.  Two of the charges are for failure to report.  The felony charge of failing to register a change in address and the misdemeanor charge concerning the fee have nothing to do with the quarterly reporting requirements.

The pertinent provision of SORA is MCL 28.725(1). It reads:

> An individual required to be registered under this act shall notify the local law enforcement agency or sheriff's department having jurisdiction where his or her new residence or domicile is located or the department post of the individual's new residence or domicile within 10 days after the individual changes or vacates his or her residence, domicile, or place of work or education, including any change required to be reported under [MCL 28.724(a) (emphasis added).]

The felony charge against defendant is premised on the fact that he failed to register a new residence. SORA defines residence as "that place at which a person *habitually sleeps*, keeps his or her personal effects, *and has a regular place of lodging*."[7] It does not appear that the defendant had a new residence to register once the VOA required him to leave the shelter. Underpasses and park benches may be the places where defendant "habitually sleeps" but they hardly qualify as a "regular place of lodging" under the statute.

It seems unreasonable to interpret the statute to require that a homeless person register wherever his or her cardboard box happens to be set up for the night.[8] City street corners fail to meet the statutory definition of residence. First, a defendant must *habitually* sleep somewhere for it to be a residence.[9] For something to be habitual, it must be more than a random occurrence or event.[10] Second, a place must be a *regular place of lodging* to qualify as a residence. Again, defendant does not have a regular place of lodging if he is nomadically moving around the city depending on the weather, availability of food, shelter, and other resources.

Moreover, SORA prohibits a defendant from registering an address that is not his or her true residence.[11] A defendant cannot register a place as his or her residence unless that place qualifies as a residence under the act. Defendant in this case would have

---

[7] MCL 28.722(g) (emphasis added).

[8] Indeed, during the preliminary examination the prosecutor argued that "[i]t's the People's position that [defendant] has an obligation . . . [to register] if he is staying on MLK and Holmes in a cardboard box . . . . And if that changes every day, then he's under obligation to go every day and to tell them where he's going to be."

[9] MCL 28.722(g).

[10] A habit is (1) "an acquired pattern of behavior that has become almost involuntary as a result of frequent repetition," (2) "customary practice or use," (3) "a particular practice, custom, or usage." Random House Webster's College Dictionary (2001).

[11] MCL 28.727(6).

violated the act by registering an address, such as a temporary park bench, because a temporary park bench does not meet the statutory requirement for a residence. Justice Young's interpretation of the statute creates a Catch-22 situation, which would force defendant either to report a false residence and violate SORA, or do nothing and violate SORA. Either way, it is impossible for him to comply with the statute.

A defendant should not be excused from SORA requirements for willfully avoiding the registration requirement by failing to establish a residence. However, a defendant cannot be held to violate the act where he cannot comply. Even if defendant in this case had registered "Greater Lansing Area" with the police, this would not satisfy the residency requirements of SORA. He simply had no residence to register. And nothing indicates that he failed to establish a residence, shuffling from park bench to highway to underpass to cardboard box, in an attempt to avoid the registration requirements of SORA.

Therefore, I believe that the circuit court may have correctly dismissed the charges against defendant because it was impossible for him to comply with SORA.

YOUNG, J. (*concurring*).

I concur in this Court's order remanding this case to the Court of Appeals for consideration as on leave granted. I write separately to express my belief that the circuit court erred in dismissing the various charges brought against defendant. Contrary to the expostulations of Chief Justice Kelly and Justice Hathaway, defendant was not charged with violating the Sex Offenders Registration Act (SORA)[12] because he is homeless or lacks a permanent residence. Rather, the criminal charges lodged against defendant are premised upon the fact that he made absolutely *no effort* to comply with the quarterly reporting requirements of the SORA for three years.

Defendant is a convicted sex offender who has been homeless since his release from prison in 2002. When defendant initially registered under SORA, he falsely provided the address of the soup kitchen where he ate meals but did not reside. Defendant last reported this address in 2003, and has not reported or updated his address since.[13]

---

[12] MCL 28.721 *et seq.*

[13] Contrary to the concurring statement of Chief Justice Kelly and the dissenting statement of Justice Hathaway, there is no evidence in the record that defendant ever resided at the Volunteers of America (VOA) address he initially provided to local law enforcement. Rather, a VOA employee testified at the preliminary examination that defendant utilized the agency's services "mostly for meals" until the agency discovered

Defendant was charged with one felony count and three misdemeanor counts relating to his failure to report in person to a local law enforcement agency on a quarterly basis, to update his residence information, and his failure to pay a reporting fee in violation of SORA. The district court bound defendant over for trial as charged. The circuit court dismissed the charges because it could not "see how a homeless person" "with no place to go" could "comply with the terms of the act." The prosecution appealed to the Court of Appeals, which denied leave to appeal.

I believe that the circuit court erred in dismissing the charges against defendant. MCL 28.725a(3) and (4)[14] require a convicted sex offender to report to the local law enforcement agency in the county in which he "is domiciled or resides"[15] on a quarterly

---

that defendant was a sex offender. While Chief Justice Kelly would prefer that the record read otherwise, the employee categorically did not testify that defendant "resided at the VOA shelter for four years." If defendant registered the address, but did not habitually sleep there, then he provided false or misleading information about his residence. Accordingly, it appears from the record that defendant has never been in compliance with MCL 28.725a(3) and (4).

[14] At all relevant times, these provisions provided:

> (3) . . . [A]n individual registered under this act who is not incarcerated shall report in person to the local law enforcement agency or sheriff's department having jurisdiction where he or she is domiciled or resides or to the department post in or nearest to the county where he or she is domiciled or resides. The individual shall present proof of domicile or residence and update any information that changed since registration, including information that is required to be reported under [MCL 28.724a]. An individual registered under this act who is incarcerated . . . shall report under this subsection not less than 10 days after he or she is released.

> (4) . . . [F]ollowing initial verification under subsection (3), . . . an individual required to be registered under this act who is not incarcerated shall report in person to the local law enforcement agency or sheriff's department having jurisdiction where he or she is domiciled or resides or to the department post in or nearest to the county where he or she is domiciled or resides for verification of domicile or residence as follows: [various regular reporting dates for sex offenders convicted of certain crimes.]

[15] SORA defines "residence" for "registration and voting purposes" as
> that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging. . . . This section shall not be

basis. These provisions require the individual to provide proof of domicile or residence and update any information that must be provided by statute. MCL 28.725(1) further provides that upon changing or vacating a residence or domicile, the individual must notify the agency of the new residence or domicile within 10 days. The burden then shifts to the agency to verify the information provided.[16]

Certainly, there was nothing preventing defendant from complying with the reporting requirements of MCL 28.725a(3) and (4) and informing law enforcement of his current living arrangements. It is undisputed that defendant had not reported to *any* police agency since 2003. Contrary to Chief Justice Kelly and Justice Hathaway's contentions, there is nothing "absurd" about the state's requirement that persons convicted of sexual crimes periodically inform the police of their living arrangements, even if they are homeless. The registration requirements of SORA "are intended to provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger." MCL 28.721a. Law enforcement's knowledge that a homeless sexual offender is residing in a city park, an abandoned building,[17] or within 1000 feet of school property[18] undoubtedly provides the police with the ability to monitor predators and protect the public.

SORA requires a sex offender to provide proof of his residence or domicile, but does not identify any *exclusive* method of providing such proof. While defendant's homelessness may have provided unusual problems in *proving* his residence, the statute expressly contemplates atypical living arrangements, permitting the State Police to specify other satisfactory means of proving proof of domicile or residence. MCL 28.725a(8) provides:

> An individual required to be registered under this act shall maintain either a valid operator's or chauffeur's license issued under the Michigan

---

construed to affect existing judicial interpretation of the term residence. [MCL 28.722(g).]

[16] MCL 28.725a(6). When defendant was initially released from prison, the substance of this provision was found in MCL 28.725a(5).

[17] Defendant's counsel represented that, since being released from prison, defendant has lived at "shelters, wherever, city parks, abandoned buildings, [or] places where people might let him stay for a day or two." Contrary to Justice Hathaway's recitation of the record, counsel did not indicate that defendant "wanders from place to place" "every day or two."

[18] See MCL 28.733(f) and MCL 28.735.

vehicle code . . . or an official state personal identification card . . . with the individual's current address. The license or card *may* be used as proof of domicile or residence under this section. In addition, the officer or authorized employee *may* require the individual to produce another document bearing his or her name and address, including, but not limited to, voter registration or a utility or other bill. *The department may specify other satisfactory proof of domicile or residence.* [Emphasis added.]

In the event that a sex offender reported to the local law enforcement agency and was truly unable to provide any of the statutorily enumerated documents to prove his residence or domicile, the duty would fall to the state police to devise some alternate verification method. Contrary to Justice Kelly's assertion, my interpretation of the statute does not "create[] a Catch-22 situation." A defendant is required to report in person to the local police and notify the police of his residence or domicile, wherever that may be. The burden then shifts to the law enforcement agency and the state police to decide how to verify the defendant's whereabouts for purposes of SORA.[19] I see nothing in SORA that authorizes the state to penalize a defendant merely for being homeless; rather, the statute penalizes the defendant's failure to report his residence or domicile with law enforcement. Accordingly, I concur in this Court's order remanding this case to the Court of Appeals for consideration as on leave granted.

CORRIGAN, J. and MARKMAN, J., join the statement of YOUNG, J.

HATHAWAY, J. (*dissenting*).

I would deny leave to appeal because I believe that the prosecutor failed to present sufficient evidence to bind defendant over for trial on the charges. The prosecutor claims on appeal that the trial court erred in dismissing the charges against defendant. Specifically, defendant was charged with the following four counts related to his alleged failure to comply with the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq*.: (1) failure to inform authorities of a new address as required by MCL 28.725(1); (2) and (3) failure to verify an address quarterly in violation of MCL 28.725a; and (4) failure to pay the registration fee within 90 days of reporting, in violation of MCL 28.725a(7) or MCL 28.727(1).

In order to sustain any of the counts, the prosecution must demonstrate that, during the period alleged in the information, defendant had a residence or domicile as defined by the statute. See MCL 28.725(1); MCL 28.725a; MCL 28.727.[20] SORA defines

---

[19] MCL 28.725a(8).

[20] The provisions relating to counts one through three expressly refer to the assumed existence of a residence or domicile. Without proving a residence or domicile, the

"residence" as "that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging." MCL 28.722(g). Though SORA does not define "domicile," the word is generally taken to mean a place where a person has his or her true, fixed and permanent home and principal establishment, to which, whenever absent therefrom, he or she intends to return. See MCL 141.609(1); *Hartzler v Radeka*, 265 Mich 451, 452 (1933).

The entirety of the prosecutor's proofs consisted of allegations that defendant, a homeless person, registered his address as the Volunteers of America shelter upon being discharged from prison, then left the shelter in 2006 without registering or reporting a new address. It is not clear whether the prosecutor is alleging that defendant actually resided at the shelter during the relevant period or merely received services, such as food, at the shelter. Assuming that the prosecutor is alleging that defendant merely received services at the shelter and did not actually "reside" there as defined by the statute, the prosecutor has failed to establish that defendant had a residence or domicile during the relevant period. If the prosecutor cannot demonstrate the existence of a residence or domicile, all four charges against defendant must be dismissed because each is premised on having a residence or domicile.[21]

Assuming that the prosecution is alleging that defendant resided at the shelter during the relevant period, and thus was required to register and periodically report that address, it presents insufficient evidence on the matter. The manager of the shelter testified at the preliminary examination that defendant *received services* at the shelter until November 2006, when he was asked to leave. For his part, defendant maintains that, since his release from prison, he has been homeless and wanders from place to place—such as abandoned buildings, parks, and shelters—every day or two. Although it might well be stated that defendant "stayed" at the shelter in question for a period, such a bare assertion does not establish a domicile or residence under the statute. The

---

prosecutor cannot establish a violation of the provisions. The provisions related to the registration fee in count four are tied to the registration and reporting requirements. See MCL 28.725a(7); MCL 28.727(1). Again, the registration and reporting requirements are premised on having a domicile or residence to report or register. Because the prosecutor failed to establish that defendant had a domicile or residence, defendant cannot be held to have violated the fee requirement.

[21] Whether defendant registered a false address when he registered the address of the homeless shelter in Lansing has no bearing on whether defendant committed the charged offenses. Even assuming that defendant registered a false address when he registered the address of the shelter, the prosecution cannot prove that defendant committed the charged acts without proving that he had a domicile or residence during the period in question.

prosecutor has the burden of presenting evidence on every element of the offense. The record evidence indicates that the prosecutor has failed to do so. The trial court recognized that the prosecution presented insufficient evidence of a residence or domicile as defined in the statute and dismissed the charges. The Court of Appeals denied leave, and I would as well.[22]

In closing, I note that the purpose of SORA is wise. Consequently, I would urge the Legislature to follow the lead of many other states in formulating a provision with which a homeless person who does not have a domicile or residence could readily comply.

---

[22] This is not to say that a homeless person by definition can never have a residence or domicile, only that the prosecution failed to prove that this particular defendant did. Furthermore, to hold that individuals who have no residence or domicile must abide by the requirement to register or report one's residence or domicile is an unlawful and absurd proposition. See *City of Port Huron v Jenkinson*, 77 Mich 414, 419 (1889) (stating that "[n]o legislative or municipal body has the power to impose the duty of performing an act upon any person which it is impossible for him to perform, and then make his non-performance of such duty a crime").



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

August 6, 2009

_____
Clerk

0804