YOUNG, C.J.
We granted leave to appeal in this case to determine whether homeless sex offenders are obligated to comply with the registration requirement imposed by the Sex Offenders Registration Act (SORA).[1] Specifically, we consider whether homeless sex offenders have a “residence” or “domicile” such that they can comply with the statute’s registration requirements. We hold that homelessness is not a bar to compliance with SORA because homelessness does not preclude an offender from entering a police station and reporting to a law enforcement agency regarding the offender’s residence or domicile. The Legislature intended SORA to be a comprehensive system that requires all sex offenders to register, whether homeless or otherwise. Therefore, we reverse the Court of Appeals’ judgment and remand this case for trial.
I. FACTS AND PROCEDURAL HISTORY
In 1984, defendant, Randall Lee Dowdy, pleaded guilty to a charge of kidnapping, five counts of first- *377 degree criminal sexual conduct (CSC-I), and a charge of possession of a firearm during the commission of a felony.[2] Defendant remained incarcerated until 2002.
As a consequence of defendant’s CSC-I convictions, he is required to register as a sex offender.[3] Defendant signed a form upon being released from incarceration acknowledging that his obligations under SORA had been explained to him. Defendant registered his residence as 430 North Larch, Lansing, Michigan, which is a location of the Volunteers of America (VOA), a homeless shelter.[4] Defendant obtained services at the VOA until the fall of 2006, when the VOA staff discovered that he was a sex offender. He left the VOA in accordance with its policy barring sex offenders from receiving its services. It appears that defendant was homeless at all times relevant to this case.
In 2006, the Lansing Police Department attempted to verify where defendant was living. According to police records, the last time that defendant reported his residence or domicile, as SORA requires, was in November 2002. In October 2006, the police visited the VOA in a further attempt to verify defendant’s information and determined that he no longer received services there. On the basis of these facts, the Ingham County Prosecutor charged defendant with violating the reporting and notification requirements of SORA.[5]
*378 After a preliminary examination, defendant was bound over to the Ingham Circuit Court, where he filed a motion to dismiss the charges. Defendant argued that SORA required him to register an address in order to comply with his statutory obligations, but claimed that because he was homeless and did not have an address, he was unable to comply with the obligation to report a “residence” to police under SORA. The circuit court found these arguments persuasive and dismissed the charges, holding that defendant’s homelessness rendered it impossible for him to comply with SORA. The prosecution appealed, and the Court of Appeals denied leave to appeal for lack of merit in the grounds presented. On appeal in this Court, in lieu of granting leave to appeal, we remanded the case to the Court of Appeals for consideration as on leave granted.[6]
On remand, a Court of Appeals panel affirmed. The Court reasoned that homeless individuals have neither a residence nor a domicile as SORA defines those terms.[7] The panel explained that “residence” referred to “a place, a dwelling, an abode, where an individual has a ‘regular place of lodging,’ ” and held that “[t]he provisional location where a homeless person happens to spend the night” does not satisfy the dictionary definitions of “lodging.”[8] Therefore, the panel held that the statutory language required only those sex offenders with a “residence” or a “domicile” to notify law enforcement and that, because the homeless have neither, they cannot comply with the statute’s require *379 ments.[9] We granted leave to appeal to consider whether homeless sex offenders can comply with SORA.[10]
II. STANDARD OF REVIEW
Issues of statutory construction are questions of law that are reviewed de novo.[11] “The cardinal rule of statutory construction is to discern and give effect to the intent of the Legislature.”[12] Courts must construe a statute in a manner that gives full effect to all its provisions.[13] If the language of a statute is clear and unambiguous, this Court must enforce the statute as written.[14] To the extent that constitutional issues are involved, they are also questions of law reviewed de novo.[15] A district court magistrate’s decision to bind over a defendant and a trial court’s decision on a motion to quash an information are reviewed for an abuse of discretion.[16]
III. ANALYSIS
A. THE SEX OFFENDERS REGISTRATION ACT
SORA is a conviction-based registration statute that requires individuals convicted of certain “listed of *380 fenses” to register as sex offenders.[17] An offender’s registration disclosure includes information regarding where the offender lives, identifying information, and a summary of the offender’s convictions.[18] Offenders are also required to sign a form acknowledging their obligations as sex offenders under SORA.[19]
The Legislature used broad language to describe SORA’s scope and intent. SORA is intended to “better assist law enforcement officers and the people of this state in preventing and protecting against the commission of future criminal sexual acts by convicted sex offenders.”[20] The Legislature determined that convicted sex offenders — homeless or otherwise — pose a potential serious danger to the safety and morals of the people of Michigan and particularly to the state’s children.[21] SORA is therefore intended to “provide law enforcement and the people of this state with an appropriate, comprehensive, and effective means to monitor those persons who pose such a potential danger.”[22] Consistent with this intent, SORA requires sex offenders to comply with a variety of statutory obligations, two of which are at issue here: (1) the quarterly reporting requirement of MCL 28.725a(4)(b), and (2) the notification requirement of MCL 28.725(1). Inherent in both obligations is the requirement that a sex offender inform law enforcement regarding the location of the offender’s “residence” or “domicile.”
All sex offenders convicted of one or more listed offenses that are felonies have an affirmative obligation *381 to report quarterly to a law enforcement agency for “verification of domicile or residence.”[23] These offenders “shall report in person” to the police between the first and fifteenth day of each January, April, July, and October.[24] This quarterly reporting requirement is not contingent on where an offender resides or is domiciled, and all offenders who are not incarcerated must comply.
Additionally, all sex offenders have an ongoing obligation to keep law enforcement apprised of changes to their residence or domicile. Specifically, sex offenders “shall notify the local law enforcement agency or sheriffs department having jurisdiction where his or her new residence or domicile is located or the department post of the individual’s new residence or domicile within 10 days after the individual changes or vacates his or her residence [or] domicile . . . .”[25] According to the statute’s plain language, a sex offender’s obligation to notify law enforcement of a new “residence” or “domicile” is triggered when the offender changes or vacates the previous “residence” or “domicile,” not when the new “residence” or “domicile” is established.
After an offender complies with the quarterly reporting requirement pursuant to MCL 28.725a(4)(b), the law enforcement agency to whom the offender reports is under an affirmative statutory obligation to verify the information provided by the sex offender.[26] MCL *382 28.725a(8) directs sex offenders to maintain either a valid driver’s license or an official state identification card, either of which may be used as proof of an offender’s residence or domicile for purposes of law enforcement verification. However, those are not the exclusive means by which an offender may prove residence or domicile to law enforcement. SORA. expressly contemplates sex offenders with an uncommon residence or domicile by providing that Michigan State Police “may specify other satisfactory proof of domicile or residence.”[27] Thus, if a sex offender is unable to provide any of the statutorily specified documents or the offender’s residence or domicile is difficult to confirm, the Michigan State Police is empowered to formulate alternative methods whereby the offender may provide information to verify the offender’s residence or domicile.
B. “RESIDENCE” AND “DOMICILE”
To comply with the statute’s registration requirements, sex offenders must provide information regarding their “residence” or “domicile.”[28] SORA defines “residence” for “registration and voting purposes” as
that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging. If a person has more than 1 residence, or if a wife has a residence separate from that of the husband, that place at which the person resides the greater part of the time shall be his or her official residence for the purposes of this act.[29]
Thus, a person’s “residence” under SORA is a combination of three things: that place where a person (1) habitually sleeps, (2) keeps personal effects, and (3) has a regular place of lodging.
*383 The words that the Legislature used to define “residence” have a broad scope and contemplate a wide array of “residences.” However, the definition of “residence” does not include every location where a person might sleep, regardless of the length of the stay. A “residence,” for purposes of SORA, is only that place where an offender habitually sleeps and establishes regular lodging. The Court of Appeals panel in this case held that defendant was relieved of any obligation to comply with SORA because “the concepts of habitually and regularity are antithetical to the circumstances of homelessness,” because homeless people do not “have the security of a customary place of lodging” and do not five “within a home.”[30]
The Court of Appeals panel erroneously concluded that the homeless were definitionally incapable of having a habitual “residence.” This assumption is bebed by the facts of this very case, in which the record shows that, at least for a time, defendant’s “residence” was listed as the VOA. Nevertheless, the panel’s legal conclusion equating a “residence” with a “home” is inconsistent -with the statutory definition of “residence” in SORA. Nothing in the relevant statutory provision suggests that “residence” is synonymous with a home, a specific street address, or even a physical structure. Rather, the definition of “residence” merely contemplates a “place.”[31] Moreover, the *384 Court of Appeals panel presumed that all homeless individuals sleep in a different location every night and can never have a regular place of lodging. Such a broad overgeneralization is unjustifiable and factually unsupported, even by the record in this case. It is entirely consistent with SORA for a sex offender to identify, for example, a vacant house or a park as a “residence” if it is, in fact, “that place at which” the sex offender “habitually sleeps, keeps his or her personal effects, and has a regular place of lodging.”
Unlike “residence,” “domicile” is not defined in SORA. Although this Court has, in several circumstances, treated the terms “residence” and “domicile” as synonymous,[32] the terms were accorded different meanings under the common law.[33] In SORA, the Legislature used both “residence” and “domicile” to describe what a sex offender can register. Therefore, construing the two terms as synonymous in this case would effectively render one of the terms nugatory — an outcome courts avoid when construing the language of a statute.[34] Accordingly, it is necessary to differentiate between “residence” and “domicile” for purposes of SORA.
*385 Michigan courts have defined “domicile” as “ ‘that place where a person has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.’ ”[35] Similarly, a domicile is “the place where a person has his home, with no present intention of removing, and to which he intends to return after going elsewhere for a longer or shorter time.”[36] More significant to the instant case is that it has long been the law of this state that “[e]very person must have a domicile somewhere.”[37] A person may have only one domicile, which continues until the person acquires a different one.[38] Thus, the essential characteristic of a “domicile” that separates it from a “residence” is that, under Michigan law, every person has a “domicile.”[39]
Even if a homeless sex offender with transient sleeping arrangements cannot establish a “residence” as SORA defines it, the offender is still capable of reporting sufficient information regarding where the offender lives for purposes of identifying a “domicile.” Although *386 it may be difficult to verify where an offender is domiciled, as noted, difficulties in verifying an offender’s information do not excuse the offender from complying with SORA’s requirements. Moreover, SORA enables the Michigan State Police to respond to such situations by empowering it to “specify other satisfactory proof of domicile or residence.”[40] Indeed, the Michigan State Police has exercised this statutory authority by promulgating an order that permits homeless sex offenders to register their domicile as “123 Homeless.”[41] An offender thus satisfies the offender’s statutory obligation by appearing at a law enforcement agency and advising the authorities of where the offender lives. Pursuant to SORA and the Michigan State Police order, the law enforcement agency can accept as “satisfactory proof” of the offender’s “domicile” the state, city, zip code, and county in which the offender lives and must add that information to the “123 Homeless” designation in the registry. Thus, when the homeless sex offender’s “domicile” is registered as “123 Homeless” in the city in which the offender lives, that is the offender’s statutory domicile for purposes of SORA.[42] Therefore, homelessness in no way prevents a sex offender from complying with the notification obligation pursu *387 ant to MCL 28.725(1) either because every person must have a legal domicile or, for practical purposes, because the Michigan State Police has promulgated an order to accommodate homeless sex offenders for the purposes of registration.
The Michigan State Police order does not contravene SORA, and the dissent’s arguments to the contrary misapprehend the order’s purpose. Although “123 Homeless” is not an actual address, an offender does not violate MCL 28.727(6) when law enforcement records the offender’s address in this manner.[43] The offender complies with SORA when the offender truthfully reports to the appropriate law enforcement agency that the offender is homeless. The law enforcement agency, in turn, records the reported information in a manner that facilitates the statutorily mandated verification obligation so that the offender’s residence or domicile can be confirmed later. Thus, the Michigan State Police order does not subject homeless sex offenders to further prosecution. The order is both authorized by and in compliance with SORA.
The Court of Appeals panel did not address whether defendant had a domicile. Instead, the Court noted that “[d]omicile is not an issue in this case because the parties agree that as a homeless person, defendant has no True, fixed, principal, and permanent home.’ ”[44] Because this Court has long acknowledged that “[e]very person must have a domicile somewhere,”[45] it was error for the panel below to conclude otherwise. Because the *388 determination of where an individual is domiciled is generally a question of fact,[46] we cannot determine where defendant was domiciled and leave this question for resolution on remand. The offender’s obligation is to truthfully inform police regarding where the offender’s residence or domicile is located, and the police have the separate obligation of verifying that information.[47]
IV APPLICATION
A. THE QUARTERLY REPORTING REQUIREMENT
Defendant argues that he is categorically excused from the statutory obligation because it is “impossible for homeless offenders to comply” with SORA, as homeless sex offenders conclusively lack either a “residence” or a “domicile.” Defendant also argues that prosecuting him for failing to comply with an impossible obligation violates his constitutional right to due process of law. We conclude that both arguments are unpersuasive.
Defendant has made no compelling claim that his homelessness rendered it impossible for him to comply with MCL 28.725a(4)(b). This provision requires sex offenders, such as defendant, to perform the physical act of reporting in person to law enforcement four times per year. This provision in SORA is unconditional and contains no exceptions or exclusions for homelessness. *389 Moreover, it applies regardless of the stability of where an offender resides or is domiciled. This absolute reporting obligation arises from the offender’s status as a sex offender and the potential danger the offender poses to the people of Michigan.[48] Therefore, defendant was required to report in person to a law enforcement agency four times per year and to provide the authorities with truthful information.
Despite this clear mandate, there is no evidence suggesting that defendant ever complied with his obligation to report in person each January, April, July, and October, even during the time defendant’s registered residence was at the VOA.[49] In fact, the record shows that 16 quarters passed without defendant ever having complied with the quarterly reporting requirement. Defendant has never claimed that it was impossible for him to appear in person at a police station. Defendant’s perceived difficulty, it seems, concerns the quality of information he contends he would have given to the police had he made an in-person appearance. However, any difficulty verifying the truthful information provided by defendant is the responsibility of law enforcement and does not negate defendant’s responsibility to appear to report in the first instance. The lower courts erred by ignoring the mandatory nature of SORA’s quarterly reporting requirement.
B. THE NOTIFICATION REQUIREMENT
When the police attempted to verify defendant’s registration information in October 2006, the investigating officer determined that defendant no longer *390 received services at the VOA. Because defendant had registered his residence as the VOA in Lansing, and because defendant was no longer permitted to receive services there, his “residence” had been “vaeate[d]” or “change[d].”[50] From the date defendant no longer resided at the VOA, he had 10 days to notify the Lansing Police, the Ingham County Sheriff, or the local post of the Michigan State Police that his registered residence or domicile was no longer accurate. According to the record, after leaving the VOA, defendant never made any attempt to notify a law enforcement agency of the change. Even if defendant had difficulty in identifying his new residence or domicile, he was nevertheless obligated to notify the authorities that his residence or domicile had changed. Nothing in the text of SORA suggests that homelessness is an excuse for an offender’s failure to comply with the act. Therefore, because it was certainly possible for defendant to notify law enforcement that he had changed his residence or domicile, and because defendant made no effort to do so, the lower courts erred by dismissing the charges.
We note further that there is no evidence in this case that defendant attempted to comply with his reporting or notification obligations and was prosecuted for failing to provide sufficiently specific information. In fact, the contrary is true. At defendant’s preliminary examination, the following exchange occurred:
The Court: So you’re telling me that [defendant] went [to the police station] and tried to report that he was homeless and they wouldn’t take the report?
[Defense Counsel]: No, Your Honor, I’m saying he does not have an obligation to report anything if he doesn’t have an address to report.
*391 This case would be different if defendant had gone to a law enforcement agency, attempted to notify or report that he was a homeless sex offender, and was turned away and subsequently prosecuted. That did not occur here. Our holding that homeless offenders must comply with the statute’s reporting and notification requirements, combined with the record evidence indicating that defendant made absolutely no effort to comply with either requirement, is sufficient to resolve the present case.
The dissent would permit a sex offender to escape any obligation to comply with SORA if the offender merely claims homelessness. The dissent argues that, as a matter of law, defendant could not comply with any of his obligations under SORA. The practical and egregious consequence of this conclusion is that if an offender unilaterally decides that he is homeless, that offender can simply ignore SORA and is no longer required to comply with MCL 28.725a(4)(a) or (b)[51] or MCL 28.725(1).[52] Because the dissent would relieve homeless sex offenders of the obligation even to enter a law enforcement agency and inform the authorities that the offender is homeless, there is no way for law enforcement agencies to confirm the veracity of the offender’s claim — creating an incentive for noncompliant sex offenders to claim homelessness once law enforcement ultimately finds them.[53] Indeed, in the *392 months immediately following the release of the Court of Appeals’ decision, the number of sex offenders claiming homelessness increased by 62 percent.[54] As noted previously, the stated purpose of SORA is to enable law enforcement and the public to monitor sex offenders. Applying a “modicum of common sense,”[55] it is difficult to imagine a conclusion that does more harm to this purpose than to enable the very people targeted by SORA to determine for themselves whether they must comply with the statute’s requirements.[56]
V CONCLUSION
By enacting SORA, the Legislature created a broad, comprehensive registration statute. The lower courts failed to give effect to the plainly expressed intent of SORA, which is to enable law enforcement and the public to monitor sex offenders. All sex offenders can, and therefore must, comply with the reporting obligations and notification requirements outlined in the statute. An offender’s homelessness in no way prevents that offender from physically entering a law enforce *393 ment agency and truthfully reporting to the authorities information regarding the offender’s residence or domicile. It was clear legal error for the lower courts to excuse defendant’s complete failure to comply with SORA. Therefore, because the Court of Appeals panel interpreted SORA in a manner contrary to the plainly expressed intent of the Legislature and because defendant made no effort to comply with his reporting obligations, we reverse the Court of Appeals’ judgment and remand defendant’s case to the Ingham Circuit Court for proceedings consistent with this opinion.
Markman, Mary Beth Kelly, and Zahra, JJ., concurred with Young, C.J.

 MCL 28.721 et seq. SORA has since been amended, see 2011 PA 17; however, those amendments do not apply to this case.

 MCL 750.349 (kidnapping); MCL 750.520b (CSC-I); MCL 750.227b (felony-firearm). See People v Dowdy, 148 Mich App 517, 518; 384 NW2d 820 (1986). Defendant admitted committing “one vaginal, two oral, and two anal” penetrations of his victim. Id. at 520.

 MCL 28.722(e)(x).

 The Volunteers of America provides a variety of services for the homeless, including overnight shelters, free meals, counseling services, and employment preparation.

 Defendant was charged with one count of violating MCL 28.729(1)(a) for failure to notify law enforcement within 10 days after he “changefd] *378 or vaeate[d] his ... residence or domicile” pursuant to MCL 28.725(1) and two counts of violating MCL 28.729(2)(a) for failure to comply with his quarterly reporting requirements pursuant to MCL 28.725a(4)(b).

 People v Dowdy, 484 Mich 855 (2009).

 People v Dowdy, 287 Mich App 278, 281-282; 787 NW2d 131 (2010).

 Id. at 281, quoting MCL 28.722(g).

 See id. at 282. Curiously, the Court of Appeals panel did not address defendant’s quarterly reporting requirement pursuant to MCL 28.725a(4)(b). The Court’s opinion only addressed defendant’s obligation to notify law enforcement of a changed or vacated “residence” or “domicile” pursuant to MCL 28.725(1).

 People v Dowdy, 486 Mich 935 (2010).

 City of Taylor v Detroit Edison Co, 475 Mich 109, 115; 715 NW2d 28 (2006).

 Drouillard v Stroh Brewery Co, 449 Mich 293, 302; 536 NW2d 530 (1995).

 People v Francisco, 474 Mich 82, 87; 711 NW2d 44 (2006).

 Robinson v Detroit, 462 Mich 439, 459; 613 NW2d 307 (2000).

 Toll Northville Ltd v Northville Twp, 480 Mich 6, 10-11; 743 NW2d 902 (2008).

 People v Hamblin, 224 Mich App 87, 91; 568 NW2d 339 (1997).

 MCL 28.722(e).

 See MCL 28.727(1).

 MCL 28.725a(2).

 MCL 28.721a.

 Id.

 Id. (emphasis added).

 MCL 28.725a(4).

 MCL 28.725a(4)(b) (emphasis added).

 MCL 28.725(1) (emphasis added). This version of the statute took effect on December 1, 2006. See 2006 PA 402. The previous version of MCL 28.725(1), which was in effect during part of the period in which defendant was charged with violating it, varied in word order but not in substance.

 See MCL 28.725a(6). Law enforcement “shall verify the individual’s residence or domicile and any information required to be reported” under MCL 28.724a. (Emphasis added.)

 MCL 28.725a(8).

 See MCL 28.725(1), MCL 28.725a(4), and MCL 28.725a(8).

 MCL 28.722(g) (emphasis added).

 Dowdy, 287 Mich App at 282.

 Contrary to the dissent’s assertions, our discussion of a “place” is not a “judicially derived shorthand definition,”post at 400; rather, it is simply an application of SORA’s plain language. MCL 28.722(g) explicitly defines “residence” as “that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging.” Thus, far from committing an “egregious error,” post at 400, our analysis simply gives effect to the Legislature’s intent by applying the statute’s unambiguous language. The dissent misconstrues SORA; although the dissent believes that some homeless sex offenders can he required to register, the dissent would require only those offenders who live in a *384 home, apartment, or homeless shelter to comply with SOBA. However, the dissent’s analysis ignores the fact that nowhere in SORA exists a requirement that offenders live in a home, or, indeed, any structure at all.

 See, e.g., Gluc v Klein, 226 Mich 175, 178; 197 NW 691 (1924) (“In this State, the words ‘domicile’ and ‘residence’ are treated as synonymous terms. In our statutes relating to voting, eligibility to hold office, taxation, probate and administration of estates, etc., no distinction is pointed out.”).

 Id. at 177-178 (“Under the common law, there was a distinction between ‘domicile’ and ‘residence.’. . . ‘[A]ny place of abode or dwelling place,’ however temporary it might have been, was said to constitute a residence. A person’s domicile was his legal residence or home in contemplation of law.”).

 Omelenchuk v City of Warren, 466 Mich 524, 528; 647 NW2d 493 (2002).

 In re Servaas, 484 Mich 634, 679; 774 NW2d 46 (2009) (Markman, J., dissenting), quoting Henry v Henry, 362 Mich 85, 101-102; 106 NW2d 570 (1960).

 Hartzler v Radeka, 265 Mich 451, 452; 251 NW 554 (1933).

 Beecher v Common Council of Detroit, 114 Mich 228, 230; 72 NW 206 (1897); see also Gluc, 226 Mich at 179.

 Beecher, 114 Mich at 230, quoting Cooley, Taxation (2d ed), p 369.

 The dissent’s critique of our “domicile” analysis is erroneous. In Beecher, the issue was whether the petitioner’s residence was located in Detroit or Negaunee. Beecher, 114 Mich at 229. Thus, far from equating domicile with a street address, Beecher described domicile in terms similar to the Michigan State Police order cited in note 41 of this opinion: by reference to a city. Additionally the dissent conflates “residence” and “domicile” although the Legislature plainly used the terms in the disjunctive, indicating that the Legislature sought to give the terms discrete meanings.

 MCL 28.725a(8).

 Michigan State Police, Official Order No. 79, April 27, 2007, p 2.

 Our analysis simply explains how homeless sex offenders may comply with their registration obligations under the framework created by SORA. Regardless of whether a homeless sex offender is nomadic or has a consistent place of residence, SORA ensures that the homeless sex offender is capable of providing sufficient information to comply with SORA’s registration requirements. Our construction is consistent with SORA’s stated purpose of creating a comprehensive system to monitor sex offenders and is far more faithful to the statute than the dissent’s construction, which would defeat this basic goal by categorically allowing offenders who merely claim homelessness to opt out of complying with SORA. The dissent would clearly incentivize this conduct.

 MCL 28.727(6) provides that “[a]n individual shall not knowingly provide false or misleading information concerning a registration, notice, or verification.”

 Dowdy, 287 Mich App at 281, quoting Black’s Law Dictionary (8th ed).

 Beecher, 114 Mich at 230.

 See, e.g., Servaas, 484 Mich at 680 (Markman, J., dissenting).

 We recognize the practical difficulties of registering an offender who is homeless, claims to be homeless, or otherwise has a nontraditional residence. That any of these circumstances exist, however, does not provide license for an offender to flout the mandates imposed by SORA. Additionally, as noted, the burden of accommodating these atypical circumstances and verifying the offender’s information falls on the governmental body charged with ensuring that an offender who seeks to comply with his registration and notification requirements can, in fact, do so.

 MCL 28.721a.

 Counts II and III of the Information charged defendant with failing to comply with his quarterly reporting duties in July 2006 and October 2006, when defendant’s registered residence was at the VOA in Lansing.

 MCL 28.725(1).

 MCL 28.725a(4)(a) and (b) require an offender to report to local law enforcement or to the State Police annually or quarterly depending on the offender’s crime.

 MCL 28.725(1) requires an offender to report to local law enforcement or to the State Police within 10 days after the offender changes or vacates the offender’s residence or domicile.

 The dissent argues that our opinion enables offenders with a home to falsely report as homeless. However, one need only read SOSA’s language to conclude that the dissent’s claim lacks merit. If an offender dishonestly *392 reports to law enforcement that the offender is homeless, the offender has “knowingly provide[d] false or misleading information concerning a registration, notice, or verification” and has violated SOBA. MCL 28.727(6). Our opinion applies SORA’s requirement that all sex offenders must report and that they must report truthfully. Far from incentivizing false reporting, our opinion requires all sex offenders to comply with SORA and to do so truthfully.

 See McVicar, Since court ruled homeless sex offenders don’t have to register, number claiming homelessness jumps 62 percent, Grand Rapids Press, available at <http://www.mlive.com/news/grand-rapids/index.ssf/ 2010/05/since_court_ruled_homeless_sex.html> (accessed July 7, 2011).

 Post at 398.

 SORA is only “purge[d]” of “any meaning,” post at 410, when the targets of the registration scheme — sex offenders — are permitted to determine whether they will comply with SORA’s mandatory requirements.