*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DOUGLAS ODISHO,

      Defendant-Appellant.

UNPUBLISHED
September 24, 2024
10:43 AM

No. 366845
Macomb Circuit Court
LC No. 2021-000432-FH

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d(1). Defendant was sentenced to two years' probation and 210 days in jail; the jail time was held in abeyance pending successful completion of probation. We affirm.

## I. STATEMENT OF FACTS

This case arises from an altercation between defendant and several Warren police officers at defendant's home, where he lives with his wife—MO, their sons—DO and NO, and their daughter. All three of defendant's children are diagnosed with autism. The Warren Police Department was very familiar with defendant's family, getting dispatched to the home more than once a week because the children would call in nonemergency situations or the parents would call when the children acted out. Officers considered the home "not [] police friendly" and a "hostile environment."

At approximately 9:00 a.m. on July 12, 2020, Warren Police Officers Daniel Toth and Robert Hamilla arrived at defendant's home after receiving a dispatch run for a reported domestic

-1-

dispute.[1]   Officers Toth and Hamilla were immediately approached at the sidewalk by DO, defendant's oldest son.  After briefly speaking with DO, Officer Hamilla approached MO, who was holding one of her eyes.  MO explained that she had been getting headaches for over six months.

Officer Toth approached defendant, and when he tried to question defendant, defendant began to invoke his right to remain silent and asked for the officers to leave unless they had a warrant.  Officer Toth, attempting to get defendant to cooperate, informed defendant that the officers had a legal reason to be at defendant's home.   Defendant, becoming more agitated, began to ask if Officer Toth wanted to put his knee in defendant's back.[2]  At this point, defendant began to yell for his neighbors to come outside.  Officer Toth then informed defendant that he was under arrest for disorderly conduct.

There is conflicting testimony about the start of the physical struggle that then ensued. Officer Toth testified that when he attempted to arrest defendant by grabbing his left hand, defendant swung at Officer Toth with his right fist, striking Officer Toth.  Officer Hamilla corroborated this version of events.  However, defendant testified that before Officer Toth had the opportunity to effect an arrest, Officer Hamilla "came and blasted [defendant] right in [his] face" with a "fist or a[n] elbow," causing him to fall onto the ground against the fence bordering the driveway, and that defendant never swung at the officers.  MO corroborated this version of events, testifying that while she was speaking with Officer Hamilla, he suddenly left her side and when she turned, she saw Officer Hamilla punch defendant in the face while he was still standing.

The struggle continued on the ground, with both Officers Toth and Hamilla attempting to gain control of defendant in a tight space between a tree and the chain link fence bordering the driveway.  In an attempt to get defendant to cooperate, Officer Hamilla punched defendant in the face "a handful of times" and pepper sprayed him, which was ineffective because defendant continued to resist, scratching at Officer Hamilla and grabbing his groin and police vest.  Officer James Rebidas then arrived and assisted in handcuffing defendant.  As Officer Rebidas was escorting defendant to a patrol vehicle, defendant tried to pull away from the officers.  In response, Officer Rebidas took defendant to the ground again and was able to regain control, then placed defendant into a patrol vehicle.

## II. PROCEDURAL HISTORY

Although Officer Toth told defendant he was being arrested for disorderly person, and later testified that he believed the local Warren ordinances for disorderly person and disturbing the peace were used interchangeably, defendant was never formally charged under any local Warren ordinances, including Warren Ordinances, § 22-110, disorderly person, or Warren Ordinances,

---

[1] The entire incident was captured on dash camera video.  The incident itself is out of frame and not visible, but the audio was captured by the officers' body microphone.  MO also took a short video on her cell phone.  Both videos were played for the jury.

[2] Defendant was referring to the incident involving George Floyd, which occurred three months earlier in May 2020, and garnered national media attention.

§ 22-107, disturbing the peace. The Warren ordinance defines "disorderly person" as someone who (1) is intoxicated in a public place and endangering the public safety or causing a disturbance; (2) possesses alcohol in an open container in the public; (3) causes improper diversion of traffic; (4) urinates or defecates in public; (5) engages in indecent and obscene conduct in public; (6) unnecessarily jostles or roughly crowds others in public; and (7) "Any person whom a peace officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime." Warren Ordinances, § 22-110. Warren Ordinances, § 22-107, disturbing the peace, provides: "[n]o person shall make, aid, give countenance to, or assist in making any improper noise, disturbance, breach of the peace or diversion tending to a breach of the peace, in any place within the city."

Rather, defendant was charged with two counts of assaulting, resisting, or obstructing police while causing injury, MCL 750.81d(2), as to Officers Rebidas and Hamilla; one count of assaulting, resisting, or obstructing, MCL 750.81d(1), as to Officer Toth; and one count of malicious destruction of police department property, MCL 750.377b, as to Officer Hamilla's police vest. As will be discussed herein, the lawfulness of defendant's arrest, however, depends on whether there was probable cause to arrest him under the Warren ordinances.

Before trial defendant moved to quash the information, arguing that it was an abuse of discretion of the district court to bind defendant over for trial because the prosecution failed to establish that defendant committed the charged felony offenses. Defendant also moved to suppress the evidence arising from his arrest because the evidence of the felony charges resulted from an unlawful seizure, and therefore was not admissible. The prosecution responded that both motions should be denied. The prosecution conceded that while the facts presented during the preliminary examination did not show probable cause to arrest defendant for "disorderly person" under the local ordinance, the district court's decision to bind this case over was based on defendant's violation of a different statute, MCL 750.170, "disturbing the peace."[3]

An evidentiary hearing was held on both motions, and Officers Toth and Hamilla testified about their familiarity with defendant and his family, as well as the incident leading to defendant's arrest. The trial court denied defendant's motion to quash from the bench, finding that it was not an abuse of discretion of the district court to bind defendant over for trial. The trial court took defendant's motion to suppress under advisement and requested supplemental briefs.

In his supplemental brief, defendant argued that he was unlawfully seized without reasonable suspicion when Officer Toth initiated contact and informed defendant that he was not free to leave because Officer Toth did not observe defendant commit any criminal offenses. Thus,

---

[3] This statute was held unconstitutional in *People v Vandenberg*, 307 Mich App 57; 859 NW2d 229 (2014), and reads as follows:

> Any person who shall make or excite any disturbance or contention in any tavern, store or grocery, manufacturing establishment or any other business place or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor.

defendant's arrest was not supported by probable cause and the evidence arising from his arrest should be suppressed.

In the prosecution's supplemental brief, it conceded that defendant had not violated the local Warren ordinance for disorderly person or the corresponding state statute, MCL 750.167. However, the prosecution argued that the facts of the case suggest that the officers had probable cause to arrest defendant for violating Warren Ordinances, § 22-107, disturbing the peace. It did not matter that the officers may have subjectively believed they could arrest defendant for disorderly person because the facts objectively show probable cause existed for a general class of offense. Thus, defendant's arrest for violation of this ordinance was lawful under MCL 764.15 because officers were present during the violation.[4]

After submission of the parties' supplemental briefs, the trial court entered an opinion and order denying defendant's motion to suppress. Relying on Warren Ordinances, § 22-107, disturbing the peace, the trial court held that while the officers may have subjectively understood the basis of defendant's arrest to be for "disorderly person," this understanding "does not invalidate [the] arrest since the circumstances viewed objectively justify the arrest for disturbing the peace."

At trial, the jury found defendant guilty on two counts of the lesser charge of assaulting, resisting, or obstructing the police as to the two charges of assaulting, resisting, or obstructing while causing injury in relation to Officers Hamilla and Rebidas. Defendant was also found guilty of assaulting, resisting, or obstructing as to Officer Toth, but found not guilty of malicious destruction of police department property as to Officer Hamilla's police vest. He was sentenced to two years' probation with jail time held in abeyance pending successful completion of probation. Defendant now appeals, arguing that the evidence was insufficient to support his convictions of assaulting, obstructing, or resisting a police officer because there was no probable cause for his underlying arrest.

## III. STANDARD OF REVIEW

Appellate courts review de novo challenges to the sufficiency of the evidence. *People v Smith*, 336 Mich App 297, 302; 970 NW2d 450 (2021). When reviewing claims of insufficient evidence, appellate courts must "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Lowrey*, 342 Mich App 99, 122; 993 NW2d 62 (2022) (quotation marks and citation omitted). Defendant also argues that his conduct

---

[4] MCL 764.15 provides, in relevant part:

> (1) A peace officer, without a warrant, may arrest a person in any of the following situations:

> (a) A felony, misdemeanor, or ordinance violation is committed in the peace officer's presence.

was speech protected by the First Amendment. This Court reviews constitutional issues de novo. *People v Dowdy*, 489 Mich 373, 379; 802 NW2d 239 (2011).

## IV. ANALYSIS

Defendant argues that there is insufficient evidence to support his convictions of three counts of assaulting, resisting, or obstructing a police officer because his initial arrest was unlawful and predicated upon constitutionally protected speech, so it was within defendant's rights to physically resist the unlawful arrest. We disagree.

For an individual to be guilty of assaulting, resisting, or obstructing a police officer under MCL 750.81d(1), the prosecution must show that: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted). In addition, " 'the prosecution must establish that the officers' actions were lawful' as an element of resisting or obstructing a police officer under MCL 750.81d." *Id.*, quoting *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012).

Defendant argues that there was insufficient evidence to show that Officer Toth's initial attempt to arrest him was lawful, and therefore the prosecution did not establish an essential element of the charges. Questions of the lawfulness of an arrest implicate a defendant's right to be free from unreasonable searches and seizures, as is guaranteed by both the United States and Michigan Constitutions. US Const, Am IV; Const 1963, art 1, § 11. "Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances." *District of Columbia v Wesby*, 583 US 48, 56; 138 S Ct 577; 199 L Ed 2d 453 (2018). Warrantless arrests are reasonable when the officer has probable cause to believe the suspect has committed a crime in the officer's presence. *Id.* The Michigan legislature has codified this standard in MCL 764.15, which provides, in relevant part:

> (1) A peace officer, without a warrant, may arrest a person in any of the following situations:

> (a) A felony, misdemeanor, or ordinance violation is committed in the peace officer's presence.

Further, "[b]ecause probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest or booking." *Wesby*, 583 US at 54 n 2.

First, defendant argues there was no probable cause for his arrest under the Warren ordinance for disorderly person, § 22-110(a)(7). When Officers Toth and Hamilla arrived at defendant's home after receiving a dispatch call for a "domestic disturbance," they approached defendant and MO, who were arguing in front of the home. Shortly after, while Officer Toth was attempting to question defendant about what was going on, defendant became increasingly irate at the officers' presence and began screaming for his neighbors to come outside. This conduct, in the mind of Officer Toth, amounted to probable cause to arrest defendant for "disorderly conduct."

Officer Toth had told defendant that he was under arrest for disorderly conduct, but testified at the evidentiary hearing held on defendant's motions to quash and to suppress that in his experience, "disturbing the peace" and "disorderly person" are terms commonly used interchangeably by officers because of the similarities of those ordinances.

In the moment of the arrest, Officer Toth believed and said that he was arresting defendant for disorderly person, but the existence of probable cause to arrest defendant for that particular offense is irrelevant so long as probable cause for *some* offense can be objectively found within the facts. See *Wesby*, 583 US at 54 n 2; See also *Devenpeck v Alford*, 543 US 146, 153-154; 125 S Ct 588; 160 L Ed 2d 537 (2004) (holding that the arrest of a driver for impersonating an officer or obstruction of justice could be supported by probable cause, notwithstanding the fact that such offenses were not closely related to the offense stated by the officers as the reason for arrest). Thus, viewing the facts in the light most favorable to the prosecution, a rational trier of fact could determine that defendant caused a disturbance or breached the peace, with defendant's conduct amounting to probable cause to arrest him for violating Warren Ordinances, § 22-107, which provides:

> No person shall make, aid, give countenance to, or assist in making any improper noise, disturbance, breach of the peace or diversion tending to a breach of the peace, in any place within the city.

A "disturbance" is "[a]n act causing annoyance or disquiet, or interfering with a person's pursuit of a lawful occupation or the peace and order of a neighborhood, community, or meeting." *Black's Law Dictionary* (12th ed).

This incident took place early in the morning outside defendant's home located in a densely populated suburban neighborhood. When defendant began to repeatedly scream for his neighbors to come outside, he did so with the intention of having his neighbors stop whatever they were doing to come outside and witness his encounter with the police, disrupting the peace and order of the neighborhood. Defendant succeeded in this regard, as Officer Toth testified at trial that after defendant began screaming, some neighbors came out of their homes. These facts, viewed objectively and in the light most favorable to the prosecution, suggest that while in the presence of a peace officer, defendant violated Warren Ordinances, § 22-107, and therefore, a rational trier of fact could determine that there was sufficient probable cause for his arrest.

Lastly, defendant argues that his arrest was unlawful because his speech that was the basis of his arrest was protected by the First Amendment and therefore cannot constitute probable cause. The prosecution frames defendant's argument as one challenging the constitutionality of the Warren disorderly person ordinance. This is an inaccurate recitation of defendant's argument, as defendant actually argues that his "cries for help were protected speech and could not, by itself, form the basis of a lawful arrest under Warren's Disorderly Person ordinance."

The First Amendment of the Constitution provides that "Congress shall make no law . . . abridging the freedom of speech . . ." US Const, Am I. However, these protections are not without limitations. Courts, in many cases, have upheld municipal ordinances which seek to regulate and maintain the peace and quiet of communities as constitutional. In *Kovacs v Cooper*, 336 US 77, 78-79; 69 S Ct 448; 93 L Ed 513 (1949), the Court rejected a constitutional challenge to a

municipal ordinance prohibiting the use of sound amplifiers that would emit "loud and raucous noises" on public streets. In *Lansing v Hartsuff*, 213 Mich App 338, 343; 539 NW2d 781 (1995), this Court rejected a constitutional challenge to a Lansing ordinance that prohibited "[d]isturbing the public peace and quiet by loud or boisterous conduct."

However, as noted above, defendant does not argue that the ordinances are unconstitutional. Rather, the entirety of defendant's First Amendment argument is contained in one paragraph in his brief on appeal. It is not enough for an appellant to simply announce a position or assert an error and then leave it up to the appellate court to discover and rationalize the basis for his claims and then search for authority either to sustain or reject his position; rather, the appellant must provide the court with authority to support his argument. *People v Beck*, 510 Mich 1, 26; 987 NW2d 1 (2022). Nonetheless, defendant has failed to sufficiently establish a violation of his constitutional rights to justify vacating his convictions, relying solely on nonbinding authority. See *New Covert Generating Co, LLC v Twp of Covert*, 334 Mich App 24, 86 n 8; 964 NW2d 378 (2020) ("Cases from other jurisdictions are not binding precedent, but we may consider them to the extent this Court finds their legal reasoning persuasive.") (quotation marks and citation omitted).

Defendant cites *Duran v City of Douglas, Ariz*, 904 F2d 1372, 1378 (CA 9, 1990), to establish that his "crying out for help" was protected speech, and as such, his arrest was a violation of his First Amendment rights. In *Duran*, the police officer admitted that he had initiated a traffic stop and detained the defendant because the defendant made an obscene gesture and yelled profanities at the officer. *Id*. The court found that the officer had illegally stopped the defendant based upon his constitutionally protected speech, without a reasonable suspicion "that some specific crime ha[d] been, or [was] about to be, committed, or that there [was] an imminent danger to persons or property." *Id*. Thus, the court held that the First Amendment protected the defendant's profanities and obscene gestures directed toward the police officer. *Id*.

Here, however, Officers Toth and Hamilla had a reasonable suspicion that either a crime had been committed or that there was an imminent danger to MO before defendant even spoke to them. As discussed previously, the officers only knew of an ongoing "domestic dispute between husband and wife and that they were fighting," where upon their arrival to the home they found MO holding her right eye, which Officer Hamilla thought could possibly be an injury from an assault. Therefore, unlike in *Duran*, here the officers' investigative stop of defendant for questioning was lawful in that they had a reasonable suspicion of criminal activity, whereas in *Duran* the officer detained the defendant in retaliation for protected speech.

Further, defendant relies on *Duran* to argue that the officers' initial attempt at arresting him was unlawful. When defendant began to scream for his neighbors, Officer Toth decided to arrest defendant for disorderly person. However, as concluded above, probable cause to arrest defendant existed for disturbing the peace, rather than disorderly person. In *Duran*, the officer contended that even if the defendant's conduct was protected, it constituted disorderly conduct or a disturbing of the peace. *Id*. at 1377. However, unlike the present case, the defendant's conduct in *Duran* could not have disturbed the peace or incited any riot as the incident occurred late at night on a deserted road on the outskirts of the town. *Id*. In the present case, defendant was screaming outside his home at around 9:00 a.m. on a Sunday in a highly populated neighborhood. Thus, the

facts show that defendant's conduct amounted to a disturbance of the peace, and *Duran* is distinguishable from the present case.

Next, defendant asserts that seeking help during an emergency is protected speech. To support this assertion, he first cites *Scheffler v Lee*, 752 Fed Appx 239, 253 (CA 6, 2018). The court in *Scheffler* points out that "Scheffler claims that calling 911 is constitutionally protected activity, but he provides little authority and no argument in support of this assertion." *Id*. The court assumed without deciding that calling 911 constitutes protected speech, and otherwise held that Scheffler failed to establish sufficient evidence that his arrest was motivated by his protected speech. *Id*. Defendant also cites *Hall v Co of Genesee*, unpublished opinion of the United States District Court for the Eastern District of Mich, issued April 24, 2014 (Docket No. 14-11133), p 2. Similar to *Scheffler*, the plaintiff in *Hall* did "not explain how the failure of emergency personnel to respond to his 911 call violated his rights under the First Amendment," and the court denied his First Amendment retaliation claim. *Id*.

Here, defendant was not "seeking help," nor was there any "emergency" arising out of the police officers' mere presence in defendant's front yard. The only testimony corroborating that defendant was seeking help came from MO, who said that after he was taken to the ground by the officers, "[a]ll I could hear him was say [sic], I can't breathe, I need help." However, this did not occur when defendant was initially calling for his neighbors to come outside, but after the officers had already decided to arrest him, where he then began resisting the officers. Further, when defendant was calling for his neighbors, there is nothing to suggest that there was any "emergency" or real threat to defendant because of the officers' presence. The officers were there for a 911 call from the residence, and the record is clear that defendant and his family were familiar with Officers Toth and Hamilla because of the officers' frequent visits to defendant's home. The officers did not arrive at defendant's home in a hostile posture, but instead greeted DO as they presumably have many times before, and tried calmly separating and talking to defendant and MO. When Officer Toth attempted to ask defendant questions, defendant became increasingly uncooperative and irate, even asking Officer Toth if he wanted to "put his knee in his back," referring to the George Floyd incident that had recently occurred. This behavior evolved into defendant screaming for his neighbors to come outside. From this, it is clear that defendant was not "seeking help" in some life-threatening emergency, but was trying to draw the attention of his neighbors with the ideas of police misconduct and injustice in his mind.

Therefore, defendant fails to establish that his conduct was protected speech under the First Amendment that could not be the basis for the underlying arrest for his convictions of assaulting, resisting, or obstructing a police officer.

We affirm.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Brock A. Swartzle