GLUC *v.* KLEIN.

1. DOMICILE—WIFE'S DOMICILE IS THAT OF HER HUSBAND.
    As a general rule the domicile of a wife is that of her husband.

2. SAME—"DOMICILE" AND "RESIDENCE" SYNONYMOUS.
    Although under the common law there was a distinction between "domicile" and "residence," in this State they are treated as synonymous terms.

3. SAME—INSANE WIFE'S DOMICILE FOLLOWS THAT OF HER HUSBAND.
    Where defendant's wife was adjudged insane and committed to a State asylum while they were living in another State, and afterwards he removed to this State leaving her in the asylum there, her domicile followed him here, since her condition rendered her incapable of choosing another.

On the question relating to dower or curtesy rights as affecting marketability of title, see note in 38 L. R. A. (N. S.) 33.

4. DOWER—INSANE WIFE IN FOREIGN STATE HAS DOWER INTEREST
   IN HUSBAND'S LAND IN MICHIGAN.
   A warranty deed signed by a husband alone would not
   bar his wife's right of dower in the lands conveyed to
   which she would be entitled under 3 Comp. Laws 1915,
   §§ 11654, 11670, if she survived him, although she was in
   an insane asylum in another State, and had never been in
   Michigan, since her domicile is that of her husband.

Appeal from Muskegon; Vanderwerp (John), J.
Submitted January 11, 1924.    (Docket No. 59.)    De-
cided March 5, 1924.

Bill by Leon Gluc and another against Frank Klein
for the specific performance of a land contract.    From
a decree dismissing the bill, plaintiffs appeal.    Re-
versed, and decree entered for plaintiffs.

*John G. Anderson,* for plaintiffs.

*Bunker & Rogoski,* for defendant.

SHARPE, J.    Defendant was formerly a resident of
the State of Minnesota.    On March 3, 1919, his wife,
Stefania Klein, was adjudged insane and committed to
a State asylum in that State, in which she has since
been confined.    Some time later (the year does not
appear), defendant removed to Muskegon county, in
this State.    On July 22, 1922, he entered into a con-
tract to sell certain real estate, then owned by him,
to the plaintiffs.    When the time for performance
arrived, he offered to execute a warranty deed of the
property without making his wife a party thereto.
The facts were stipulated.    The question presented is
thus stated:

"It is agreed by the attorneys for the respective
parties that if the wife of defendant has a right of
dower in said land, in case she survives her husband,
the said defendant's offer to execute a warranty deed
as above stated would not fulfill his obligations under
the said contract.    That if the said wife has no dower

right in case of the death of her husband, prior to her death in said land, then such warranty deed would fulfill all that is required of him by said contract."

The applicable provisions of our statutes (3 Comp. Laws 1915), are as follows:

"(11654) SECTION 1. The widow of every deceased person shall be entitled to dower, or the use, during her natural life of one-third part of all the lands whereof her husband was seized of an estate of inheritance, at any time during the marriage, unless she is lawfully barred thereof."

"(11670) SEC. 21. A woman being an alien, shall not on that account be barred of her dower, and any woman residing out of the State shall be entitled to dower of the lands of her deceased husband, lying in this State, of which her husband died seized, and the same may be assigned to her, or recovered by her, in like manner as if she and her deceased husband had been residents within the State at the time of his death."

While the wife's right to dower during the lifetime of her husband is inchoate, or, as it is sometimes expressed, "in expectancy," a perfect title to lands owned by him cannot be given without the barring of such right. This she may do by joining in the conveyance with her husband. Under the statute, if the wife resides out of the State, her right of dower is barred by a conveyance executed by the husband alone. The answer to the question presented, therefore, hinges on whether, as a matter of fact and of law, the wife of defendant is a resident of this State.

It may be stated as a general rule that the domicile of a wife is that of her husband. Under the common law, there was a distinction between "domicile" and "residence." The former, in its ordinary acceptation, was defined to be, "A place where a person lives or has his home," while "Any place of abode or dwelling place," however temporary it might have been, was said to constitute a residence. A person's domicile

was his legal residence or home in contemplation of law. It was only in most exceptional cases (not necessary here to note) that a wife not actually living with her husband was held to have acquired a domicile separate and distinct from that of her husband.

In this State, the words "domicile" and "residence" are treated as synonymous terms. In our statutes relating to voting, eligibility to hold office, taxation, probate and administration of estates, etc., no distinction is pointed out. In section 11400, 3 Comp. Laws 1915, providing for the jurisdiction of courts in divorce cases, the words, "resided in this State," are used in one subsection and "domiciled in this State" in another, with apparently the same meaning.

In *Beecher* v. *Detroit Common Council*, 114 Mich. 228, the question of plaintiff's liability for personal taxes in the city of Detroit was presented. The statute (section 13, Act No. 206, Pub. Acts 1893) provided that personal property should be assessed at the place of which the owner "is an inhabitant." This was held to mean the place of which he is a resident, and, in discussing the question, the court cited and relied on the law relating to domicile, treating the words "residence" and "domicile" as synonymous terms.

In Jacobs on the Law of Domicil, § 209, it is stated as the general rule that—

"Upon marriage, the domicil of the wife merges in that of the husband, and continues to follow it throughout all of its changes, so long as the marriage relation subsists."

While he may select a new home, she is bound, as a general rule, to accompany him to it. And, while a change of habitation or bodily presence is an indispensable requisite for the acquisition of a new domicile by him, it is not a necessary condition of a change of domicile by her, as her domicile depends upon that

of her husband. We are not here considering the legal aspects of a separation by mutual agreement or due to the claimed misconduct of either party. The absence of the wife of defendant from his home is not due to either of such causes. Her mental condition is the sole cause. It must be assumed that, should she at any time recover, she will return to his home and that he will receive and welcome her there.

"It is a maxim that every man must have a domicile somewhere; and also that he can have but one." Cooley on Taxation (2d Ed.), p. 369.

The domicile of defendant's wife at the time she was taken to the asylum was at his home in Minnesota.

"An insane person does not change his domicil by being removed to an insane hospital in another town or county." Jacobs, Law of Domicil, § 269.

Her domicile, therefore, remained fixed at his home while he resided in Minnesota and followed him when he removed to Michigan. Her condition rendered her incapable of choosing any other. Had she been in sound mind, it would, for all that appears, have been her duty to have accompanied him to this State, and, had she refused to do so, a different question would be presented. She has no longer a home in Minnesota and, consequently, no domicile there. We feel constrained to hold that her legal domicile is now at his home in this State.

Suppose that, instead of mental trouble, she had been afflicted with tuberculosis and had been left by him in a sanitarium in Minnesota for treatment. The time of her absence from her home would be dependent upon her recovery. In such a case, it could scarcely be contended that, in law, she did not become with him a resident of Michigan. The reason for holding that her domicile would follow his, where the

separation was involuntary on her part, would seem to be more convincing.

Attention is called to our decisions construing the constitutional provision relating to homesteads (Art. 14, § 2), *Stanton* v. *Hitchcock,* 64 Mich. 316 (8 Am. St. Rep. 821), and *Standard* v. *Jewell,* 206 Mich. 61. In the latter case it was said:

"A wife living separate and apart from her husband in another State has no homestead right in her husband's lands in Michigan."

In that case there was a voluntary separation of the husband and wife. In *Black* v. *Singley,* 91 Mich. 50, cited as an authority for this holding, it is pointed out that a husband and wife, living apart in different States, under the circumstances there existing, each might claim a homestead, but "neither could claim both."

In *Ekegren* v. *Marcotte,* 159 Wis. 539 (150 N. W. 969), relied on by defendant, the court held that the facts did not justify the application of the rule "that residence of husband is residence of wife." The wife in that case was voluntarily living in Massachusetts during the time her husband was in Wisconsin. The court said:

"It is very doubtful at least whether the evidence shows that the husband of defendant was a resident, but in any event the evidence shows that the defendant was not residing in Wisconsin within the meaning of the statute."

The facts are not stated very clearly, but, apparently, the defendant had acquired a domicile separate and apart from that of her husband, the case thus falling within an exception to the general rule.

The right of a married woman to dower has always been favored and carefully guarded in the law. It does not arise out of contract between the husband and wife, but is founded on public policy and made an in-

cident of the marriage relation. It will always be awarded by courts in case of doubt. 19 C. J. p. 460.

The decree entered is reversed. One may be entered here, granting relief to plaintiffs as prayed for in their bill of complaint, with costs of both courts.

CLARK, C. J., and McDONALD, BIRD, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.