# Order

Michigan Supreme Court
Lansing, Michigan

June 29, 2007

132499-132502

CLAUDIA CERVANTES,
        Plaintiff,
and

LEONILA ROBLES-MACIAS, ETELBINA
ROBLES-MACIAS, FIDEL MARTINEZ, JOEL
MARTINEZ, BORGESS MEDICAL CENTER
and TRINITY HEALTH-MICHIGAN d/b/a
BATTLE CREEK HEALTH SYSTEMS,
        Plaintiffs-Appellees,
and

FARMERS INSURANCE EXCHANGE,
        Intervening-Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,
        Defendant-Appellant,
and

FOUNDERS INSURANCE COMPANY,
        Defendant-Appellee,
and

FOUNDERS INSURANCE COMPANY OF
MICHIGAN, NORTH POINTE INSURANCE
COMPANY, and MICHAEL D'ANTHONY
DAVIS,
        Defendants.
_____/

SC: 132499-132502
COA: 259850; 259851; 260459; 260460
Calhoun CC: 03-003671-NI; 03-003673-NI; 03-003672-NI; 03-003674-NI

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

On order of the Court, the application for leave to appeal the October 12, 2006 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MARKMAN, J., dissents and states as follows:

I respectfully dissent. By denying leave to appeal in this case, the majority leaves intact a published decision of the Court of Appeals that holds that a person who is unlawfully in the United States, and who is therefore subject to deportation at any time, may nevertheless be considered "domiciled" in Michigan. Because I strongly disagree with this proposition, I would reverse the judgment of the Court of Appeals and remand the case to the trial court for the entry of an order of summary disposition in favor of defendant Farm Bureau.

Plaintiffs, four illegal aliens, were injured while riding in an automobile owned by Cesar Garcia and insured by defendant Founders Insurance Company. Plaintiffs Leonila and Estelbina Robles-Macias lived in the home of their brother, Salvadore Robles-Macias, and plaintiffs Fidel and Joel Martinez lived in the home of Fidel's brother, Sebastian Martinez Lopez. Defendant Farm Bureau insured both Salvadore Robeles-Macias and Sebastian Martinez Lopez. Plaintiffs brought the instant action, claiming that they are each entitled to no-fault benefits from Farm Bureau through their relatives' policies. The trial court denied Farm Bureau's motion for summary disposition, concluding that plaintiffs' status as illegal aliens did not disqualify them from being "domiciled" in Michigan for purposes of MCL 500.3114(1). The Court of Appeals affirmed in a published opinion.

MCL 500.3114(1) states, in relevant part:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either *domiciled* in the same household, if the injury arises from a motor vehicle accident. . . . [Emphasis supplied.]

When construing a statute, this Court's primary obligation is to ascertain the legislative intent that may be reasonably inferred from the express words of the statute. *Chandler v Muskegon Co*, 467 Mich 315, 319 (2002). "Domicile" is a legal term defined in Black's Law Dictionary (5th ed) as "[t]hat place where a man has his true, fixed, and permanent home and principal establishment and to which, whenever he is absent he has the intention of returning." Similarly, it is defined as a legal term in the New Shorter Oxford English Dictionary (1993) as "[t]he place of a person's permanent residence, which he or she leaves only temporarily."

In *Workman v DAIIE*, 404 Mich 477, 496-497 (1979), this Court set forth a four-factor test to determine whether for purposes of the no-fault act a person is "domiciled in the same household" as a relative. The factors set forth in *Workman* are:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the

place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. [Citations omitted.]

The Court of Appeals erred by applying the *Workman* test without considering the *purpose* of that test -- i.e., to differentiate a "domicile" from other sorts of living arrangements. For 160 years, this Court has defined the term "domicile" as a person's *permanent* home. See, e.g., *In re High*, 2 Doug 515, 523 (Mich, 1847) ("[N]o person can have more than one such domicile [which is] . . . the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning.") *Beecher v Detroit Common Council,* 114 Mich 228, 230 (1897) ("If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile."); *Henry v Henry,* 362 Mich 85, 101-102 (1960) ([A domicile is] "'that place where a person "has voluntarily fixed his abode not for a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time."'") (Citation omitted.)

Moreover, while the Court of Appeals correctly points out that the terms "domicile" and "residence" have often been defined synonymously, this Court has routinely defined "residence" in terms of a person's *permanent* residence. See, e.g., *Campbell v White*, 22 Mich 178, 196 (1871) ("Reside" for purposes of the tolling provision to the statute of limitations, 1847 CL 5369, "must be understood as importing something so distinct, definite and fixed as to constitute the party's home the place of permanent abode, which, whenever left temporarily or on business, the party intends to return to, and on returning to, is at home.");[1] *Wright v Genesee Circuit Judge*, 117 Mich

---

[1] In discussing the relationship between a "residence" and "domicile," this Court cited the New York Court of Appeals for the following proposition:

> "Ordinarily one's residence and domicile (if they do not always mean the same thing) are in fact the same, and where they so concur they are that place which we all mean when we speak of one's home. And it may be safely asserted that where one has a *home*, as that term is ordinarily used and understood among men, and he habitually resorts to that place for comfort, rest, and relaxation from the cares of business and restoration to health, and there abides in the intervals when business does not call—that is his residence, both in the common and legal meaning of the term. And to one who has such a home, and habitually uses it as such, a place of business elsewhere is not his residence within any proper definition of the term." [*Id.* at 178, quoting *Chaine v Wilson*, 1 Bos 673 (NY, 1858).]

244, 245 (1898) (defining "residence" as "the place where one resides; an abode; a dwelling or habitation; especially, a settled or permanent home or domicile."); *Beecher, supra* at 230 (1897) (holding that a "temporary abode in a place does not establish a residence there"); *Reaume & Silloway v Tetzlaff*, 315 Mich 95, 99 (1946) (relying on *Wright*'s definition of "residence").

Perhaps most significantly, in *Gluc v Klein*, 226 Mich 175, 177 (1924), this Court noted that "while 'Any place of abode or dwelling place,' however temporary it might have been, was said to constitute a residence," a person's "domicile" has been traditionally understood as "his *legal* residence or home in *contemplation of law*." *Id.* at 177-178 (emphasis supplied).

Thus, the *Workman* test must be understood in the context of the longstanding rule defining a "domicile" as a person's *permanent* and *legal* residence. The *Workman* test does not substitute for that rule; it is intended merely to facilitate application of the rule by identifying factors for distinguishing between a permanent and a temporary dwelling place. While a person may have numerous "temporary abodes," e.g., a summer home or cottage, "[o]ne cannot be permanently located in more than 1 place; one cannot be domiciled in more than 1 place; one cannot intend to remain for an extended period of time in more than 1 place." *In re Scheyer's Estate*, 336 Mich 645, 652 (1953). See also *O'Connor v Resort Custom Builders, Inc*, 459 Mich 335, 345 (1999) (defining "domicile" as "the place where [a person] permanently reside[s]").

Persons who are in the United States unlawfully simply cannot be considered to permanently reside in this state. As I observed in my dissenting statement in *Sanchez v Eagle Alloy, Inc*, 471 Mich 851, 852-853 (2004), "the illegal alien is in violation of the law, and subject to immediate arrest and incarceration or deportation." The illegal alien is essentially a fugitive whose presence in Michigan is at all times in violation of the law and who, if apprehended, would be subject to immediate deportation from this country. His status thus is of a transient nature, because he can only remain in this state as long as he can avoid detection. He cannot be considered a "legal" resident of this country or this state, or otherwise to be dwelling within this country or this state in "contemplation of law." Therefore, plaintiffs fail to meet the threshold requirement under MCL 500.3114(1), and defendant cannot be held liable for payment of no-fault benefits under the statute.[2]

To the extent that application of the *Workman* factors suggests that plaintiffs were domiciled in Michigan for purposes of the no-fault act, I note the obvious, i.e., that when the *Workman* opinion was issued in 1979, illegal immigration was virtually nonexistent

---

[2] Whether plaintiffs may be entitled to no-fault benefits from the insurer of the vehicle they were riding in at the time of the accident, MCL 500.3114(4), is not an issue before the Court.

when compared to the present and there was no issue of immigration status in that case. Thus, *Workman* simply did not contemplate the effect of a person's immigration status on the question of domicile. Had it done so, it can hardly be doubted that this Court would have included such a factor in the determination of domicile. Once again, it is "domicile" that is at issue, not the factors that *Workman* promulgated to *assist* in this determination.

The trial court and the Court of Appeals have misread MCL 500.3114(1) by failing to define the term "domicile" as a person's "legal and permanent residence."[3] Because plaintiffs are in this country unlawfully, and are subject at all times to immediate arrest and deportation, they cannot in any sense be considered "legal" and "permanent" residents of this state. Therefore, plaintiffs are not "domiciled" in Michigan as required by MCL 500.3114(1). Accordingly, I would reverse the judgment of the Court of Appeals and remand this case to the trial court for the entry of an order of summary disposition in favor of defendant.

It is hard to conceive of a proposition more antithetical to the rule of law than that an illegal alien -- a person who is *unlawfully* within this country and subject at all times to deportation if apprehended -- may be considered to be "lawfully" and "permanently" domiciled within this state. In allowing the rule of law to be devalued as it is here, the majority owes a substantially greater obligation of explanation than it gives to the people of this state, whose law this Court serves as custodian.

CORRIGAN, J., joins the statement of MARKMAN, J.

---

[3] For the reasons set forth in my dissent in *Sanchez,* the Court of Appeals also seriously errs in placing the burden on the Legislature to *exclude* illegal aliens from statutes, when that is the Legislature's intention, rather than placing the burden on the Legislature to *include* illegal aliens in statutes when that is their intention. Regrettably, the majority continues to avoid addressing this critical issue.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 29, 2007

p0626

Clerk