Zahra, J.
(concurring). I concur in the result reached by the majority in these cases. I also agree with the majority that a person, including a minor child, can have only one domicile at any given time. I disagree, however, with the rule the majority has adopted for determining the domicile of a child with two legal residences under the Child Custody Act[1] for several reasons. The majority *517 holds that the domicile of a child with two legal residences is necessarily equated with a family court order establishing physical custody of that child, regardless of whether the parents in fact follow the family court’s order. Although this rule appears to have the benefit of reaffirming the legally binding nature of a custody order, such a perfunctory rule falls far short of addressing the practical realities of post-divorce familial relationships.
The majority assumes that physical custody orders are the same as domicile determinations as a matter of law.[2]1 question this assumption. Instead, I believe the Child Custody Act grants the family court the authority to establish the custodial environment(s) of the child or children subject to that order. It is from this custodial environment that the legal determination of domicile can be made.
I also disagree that a family court order of joint physical custody can establish an alternating domicile system, whereby the minor child’s domicile is wherever the custody order indicates the child is supposed to be. Such a system is a semantic end-run around our traditional rule that a person may only have one domicile and ignores the practical reality that in virtually all cases, a child will have a primary residence that will constitute the child’s domicile.
I conclude that the majority’s rule unduly impinges on the ability of an insurer to accurately assess its risks *518 when entering insurance agreements and places an unreasonable burden on insurers to inquire about, obtain, and interpret family court orders. This is because the majority rule places no-fault personal protection insurance (PIP) liability on the insurer of the parent who has been ordered physical custody, even when the child is not primarily living with that parent. The majority’s rule, in my view, is inconsistent with the no-fault act, which provides PIP protection for “accidental bodily injury to the person named in the policy, the person’s spouse, and a relative of either domiciled in the same household . . . .[3]
It is an undeniable fact that parents involved in custody disputes often reach an agreement between themselves to provide for a different custodial environment than that provided in the family court’s initial order of custody. I would adopt a rule that recognizes this reality. Specifically, I would conclude that family court orders of custody establish a presumption of domicile that may be rebutted when the child’s actual living arrangements are so clearly inconsistent with the family court’s custody order that it is reasonable to conclude that the parents have expressly or impliedly reached an agreement regarding the child’s domicile. To rebut this presumption, I would require courts to consider the factors traditionally used to assess domicile to determine the domicile of minor children.[4]
Thus, in Grange, I conclude that the presumption of domicile created by the family court’s judgment of *519 divorce is not rebutted under the facts of this case and, consistent with the majority, I would reverse the judgment of the Court of Appeals and remand to the circuit court for entry of summary disposition in favor of Grange. In ACIA, I conclude that the Court of Appeals erred by finding a question of fact regarding the child’s domicile. Reviewing the record as a whole, I conclude that the evidence did not rebut the presumption, created by the family court’s orders, that the child was domiciled in Tennessee. Consistent with the majority, I would reverse the judgment of the Court of Appeals and remand to the circuit court for entry of summary disposition in favor of ACIA.
I. ANALYSIS
A. DOMICILE GENERALLY
A person’s domicile is significant in a variety of legal contexts,[5] and it is a concept with deep roots in Michigan law.[6] This Court stated in 1847 that it is “well settled that no person can have more than one [national] domicile, at one and the same time . .. .”[7] This Court has recently reiterated that a person may have only one domicile, and “a domicile is ‘the place where a person has his home, with no present intention of removing, and to which he intends to return after going *520 elsewhere for a longer or shorter time.’ ”[8] Generally, domicile is “a question of fact and intent[,]” and a determination of domicile involves looking at all the facts and circumstances to determine whether the evidence that a person is domiciled in one location outweighs the evidence that a person is domiciled in another location.[9]
As observed by the majority, there are three means of acquiring a domicile, depending on the factual context: “(1) domicile of origin or of nativity; (2) domicile of choice; and (3) domicile by operation of law.”[10] In Miss Band of Choctaw Indians v Holyfield, the Supreme Court of the United States discussed the concept of domicile, drawing on “common-law principles of domicile” and explaining:
“Domicile” is, of course, a concept widely used in both federal and state courts for jurisdiction and conflict-of-laws purposes, and its meaning is generally uncontroverted. “Domicile” is not necessarily synonymous with “resi *521 dence,” and one can reside in one place but be domiciled in another. For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one’s intent to remain there. One acquires a “domicile of origin” at birth, and that domicile continues until a new one (a “domicile of choice”) is acquired. Since most minors are legally incapable of forming the requisite intent to establish a domicile, their domicile is determined by that of their parents.[11]
Domicile by operation of law occurs when a person lacks the capacity to establish a domicile by choice.[12] Therefore, because a minor child typically cannot form the requisite intent to establish a domicile by choice, a minor child’s domicile is determined, by operation of law, by the domicile of the child’s parents.[13] One’s domicile of origin is the starting point, and it remains a person’s domicile until that domicile is usurped by a subsequent domicile attained by choice or by operation of law.[14] Where a child’s parents have changed their own *522 domicile, the domicile of the child likewise changes by operation of law.[15] However, these common law notions of domicile do not resolve the question of where a child is domiciled when the child’s parents share, at a minimum,[16] joint legal custody such that the child has two legal residences pursuant to the Child Custody Act.[17]
B. DOMICILE AS IT RELATES TO THE MICHIGAN NO-FAULT ACT
Pursuant to MCL 500.3114(1), the no-fault act provides PIP protection for “accidental bodily injury to the person named in the policy, the person’s spouse, and a relative of either domiciled in the same household .. . .” Generally speaking, domicile determinations for purposes of assessing insurer liability in the no-fault context are made by considering the factual circumstances surrounding the party’s living situation and by balancing and weighing several factors, none of which is determinative on its own.[18] A non-exhaustive list of factors for determining whether a person is “domiciled in the same household” under the no-fault act was articulated by this Court in Workman:
*523 Among the relevant factors are the following: (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his “domicile” or “household”; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging “residence” or “domicile” in the household.[19]
To address “the particular problems posed by young people departing from the parents’ home and establishing new domiciles as part of the normal transition to adulthood and independence[,]”[20] the Court of Appeals has considered whether a child of majority age is “domiciled” with the child’s parents in several cases.[21] In the first of these cases, Dairyland, the Court of Appeals laid out additional relevant factors for determining whether a child is domiciled with his or her parents:
[(1)] whether the claimant continues to use his parents’ home as his mailing address, [(2)] whether he maintains some possessions with his parents, [(3)] whether he uses his parents’ address on his driver’s license or other documents, [(4)] whether a room is maintained for the claimant at the parents’ home, and [(5)] whether the claimant is dependent upon the parents for support.[22]
*524 However, this Court has not yet addressed where a minor child is “domiciled” for purposes of no-fault insurance when the child’s parents maintain two separate households, which both constitute a legal residence of the child pursuant to the Child Custody Act.[23] Because domestic relations law and the Child Custody Act are implicated in this no-fault context, it is appropriate to review the law regarding child custody.
C. CUSTODY DETERMINATIONS
Under the Child Custody Act, until a child turns 18, the family court has jurisdiction to make child custody determinations when there is a child custody dispute.[24] The Child Custody Act provides, in pertinent part:
(1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:
(a) Award the custody of the child to 1 or more of the parties involved or to others and provide for payment of support for the child, until the child reaches 18 years of age....[25]
The Child Custody Act first provided for joint custody in 1981.[26] MCL 722.26a requires the family court to advise parents of joint custody and, upon request of either parent, to consider awarding joint custody of a child. “Joint custody” is defined as:
... an order of the court in which 1 or both of the following is specified:
*525 (a) That the child shall reside alternately for specific periods with each of the parents[, or]
(b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child. [][27]
Although not specifically named as such by the statute, “the custody described in [(a)] is commonly referred to as joint physical custody, and that described in [(b)] is referred to as joint legal custody.”[28] Therefore, a family court may grant (1) “legal custody” to one or both parents and (2) “physical custody” solely to one parent or jointly to both, which would involve the child “residing] alternately for specific periods with each of the parents.”[29]
Under MCL 722.31, where the parents of a child share joint legal custody and parental custody of that child is governed by a court order, the child is considered to have a legal residence with each parent for purposes of evaluating a parent’s action to change the child’s legal residence.[30]
*526 D. A MINOR CHILD MAY NOT HAVE DUAL DOMICILES
Complications arise in determining the domicile of a child for purposes of no-fault insurance where the child has two legal residences because his or her parents share legal custody. The trial court and the Court of Appeals both reached the extraordinary conclusion in Grange that Josalyn had two domiciles: one with Ros-inski and one with Lawrence. This conclusion departs from established Michigan law that a person may have only one domicile.[31] I join the majority in reaffirming this long-standing principle. Further, I agree with the majority’s conclusion that Workman[32] “does not stand for the proposition that domicile is the equivalent of residence under MCL 500.3114(1).”[33]
As this Court stated in Gluc v Klein:
Under the common law, there was a distinction between “domicile” and “residence.” The former, in its ordinary acceptation, was defined to be, “A place where a person lives or has his home,” while “Any place of abode or dwelling place,” however temporary it might have been, was said to constitute a residence. A person’s domicile was his legal residence or home in contemplation of law.[34]
*527 While “residence” may be defined in more restrictive ways under Michigan law,[35] for example, “legal residence” as discussed in Gluc, the underlying distinction between the concepts of domicile and residence remains: while a person may have only one domicile, he or she may have more than one residence. And while legal residence is often equated with domicile, because there can be only one domicile, where two legal residences exist, it is axiomatic that only one can be determined to be the domicile. The fact that a domicile determination is complicated by the factual circumstances of the inquiry does not constitute a sound reason to depart from the established principle that a person can have only one domicile. Therefore, even where a child is considered to have a legal residence with each parent, his or her domicile must be that of only one of the child’s parents.
E. THE MAJORITY’S DOMICILE BY OPERATION OF LAW APPROACH
The majority attempts to extend the common-law doctrine of domicile by operation of law beyond its logical and practical bounds. I agree with the majority that unemancipated minor children cannot establish a domicile by choice, given that they are incapable of forming the requisite intent.[36] But domicile by operation of law, the means by which unemancipated minors *528 acquire the domicile of their parents, is not easily determined when parents share joint legal custody, given that joint legal custody creates two legal residences for the child, either of which could constitute the child’s domicile.[37] While the domicile-by-operation-of-law framework indicates that there are two potential residences where a child could be considered domiciled in this context, given that there can only be one domicile, it stops short of answering, “Which legal residence constitutes the child’s domicile?”
Despite the fact that the majority and I agree that a child may only have one domicile at any given time, the majority’s alternating-domicile theory for children whose parents share joint physical custody contradicts this long-standing principle and in substance permits dual domiciles for such children. This alternating-domicile concept is unprecedented in the domicile jurisprudence of this state, which views domicile as that place where a person ultimately returns, despite going elsewhere for a period of time.[38] As the majority states, “For over 165 years, Michigan courts have defined *529 ‘domicile’ to mean ‘the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning.’ ”[39] The fact that a child cannot establish a domicile by choice is not a sufficient reason to ignore that permanence underpins the concept of domicile in our jurisprudence.[40]
Further, the majority opinion assumes that a custody order establishes domicile as a matter of law. While a family court’s orders pertaining to custody and the legal residence of a child, if implemented, can certainly establish custodial environments from which a domicile arises and, thus, a legal determination of domicile can be made, I question whether the family court has the authority under the Child Custody Act to explicitly set a child’s domicile by court order. The Child Custody Act speaks in terms of “legal residence” and only uses the word “domicile” in one section of the statute, MCL 722.27b(9), which states:
The court shall not enter an order prohibiting an individual who has legal custody of a child from changing the domicile of the child if the prohibition is primarily for the purpose of allowing a grandparent to exercise the rights conferred in a grandparenting time order entered under this section.
Significantly, the use of “domicile” in this section does not suggest that family courts have the authority to establish, as a matter of law, a child’s domicile in making a custody determination. Rather, this section assumes a parent has legal custody of a child, and it prohibits a court from barring that parent from a *530 change of domicile so that a grandparent may seek or maintain visitation with the child.
Moreover, the majority rule now requires insurance companies to inquire about custody orders, obtain a copy of those orders, and interpret those orders to properly assess its risks,[41] which unduly burdens insurers and injects unreasonable uncertainty into an insurer’s risk-assessment process.[42] The majority’s rule prevents an insurer from being able to simply ask, “Who resides with you?” to assess its risks. Ultimately, the majority’s rule, in my view, is inconsistent with the no-fault act, which provides PIP protection “to accidental bodily injuiy to the person named in the policy, the person’s spouse, and a relative of either domiciled in the same household .. . ,”[43] Under the majority’s rule, a child could be “domiciled” in one state pursuant to a custody order, but actually live in another state.[44] It is difficult to discern how such a situation could constitute being domiciled in the same household.
*531 F. DETERMINATION OF DOMICILE OF CHILDREN WITH TWO LEGAL RESIDENCES
A domicile determination for a minor child of parents who have separate domiciles brings with it unique considerations due to the family court’s involvement in making child custody determinations and the court’s involvement in circumstances where a change in the legal residence of a child is disputed.[45] Like the traditional examination of a person’s domicile, in my view, the determination of the domicile of a child with two legal residences requires a review of all the facts and circumstances to determine whether the evidence that the child is domiciled in one legal residence outweighs the evidence that the child is domiciled in another legal residence.[46] But in light of the family court’s involvement in determining where a child resides, and the deference owed to that court’s determinations, an inquiry into where a child is domiciled also necessarily involves consideration of the family court’s orders relating to custody of a child and a child’s legal residence(s). While generally no one factor is conclusive in determining domicile,[47] in this unique context, a family court’s custody and residence determinations are the starting point for determining a child’s domicile because “[a] party must obey an order entered by a court with proper jurisdiction.”[48] Therefore, I would begin with the presumption that the parties to family court orders relating to custody and residence of the child have in fact obeyed and implemented those orders.[49]
*532 Further, custody and residence determinations are made by family courts when disputes arise between parents.[50] A family court’s custody and residence determinations inform where and with whom the child is supposed to live, sleep, spend his or her time, and ultimately return, though the child may spend time elsewhere. I would establish a rule that presumes that these determinations reflect the actual living situation of the child, and, thus, function as a proxy for the intent of the parents regarding the child’s domicile, due to the parents’ inability to form a joint parental intent.
Nonetheless, I recognize the reality that, with the passage of time, a child’s living situation will not always align with the family court’s orders, despite the general rule that a party must follow the orders of a court. It is common for parents, after the bitterness of a custody dispute has subsided, to resolve their differences over time and to reach an agreement regarding the living *533 arrangements for their child.[51] Parents commonly reach amicable, private agreements, reflective of their joint intent, that conflict with an existing family court order.
Regarding a change in legal residence, the Child Custody Act requires parents to seek the family court’s approval before moving a child more than 100 miles from his or her legal residence, unless, among other exceptions, the other parent consents to the move.[52] Regarding a modification of a custody order, however, the Child Custody Act envisions parents returning to the family court to seek modifications.[53] Therefore, *534 while parents have a legal duty to seek the family court’s approval of amicable agreements regarding custody modifications, this does not always occur. The majority’s view fails to take this reality into account.
In consideration of these realities, while at the same time recognizing the need for a rule that fosters consistency, I would hold that, for purposes of determining domicile under the no-fault act, where the facts regarding the child’s living arrangements are reasonably consistent with the provisions of the family court’s orders, those orders will be determinative of the child’s domicile.[54] However, where the facts of the child’s living *535 arrangements are so clearly inconsistent with the family court’s orders that it is reasonable to conclude that the child’s parents have expressly or impliedly reached an agreement regarding the child’s domicile that differs from the domicile indicated by the family court’s orders, the presumption of domicile created by the family court’s orders would be rebutted.[55] Under this rule, courts would make domicile determinations in light of the actual facts of the custodial situation, rather than solely on a court order that may have little relevance to the actual living situation of the child after the passage *536 of time, namely, with regard to which parent actually has physical custody of the child.[56] This presumption would promote certainty regarding domicile determinations in the no-fault context,[57] maintain the longstanding character of the no-fault domicile inquiry as an inquiry focused on the actual facts of the situation,[58] and afford the appropriate deference that custody and legal-residence determinations ought to be given outside the domestic relations context.[59]
*537 In determining whether this presumption can be rebutted, I would have courts look to the traditional nonexclusive factors for determining domicile for purposes of no-fault insurance articulated by this Court in Workman and, particularly, those articulated by the Court of Appeals in Dairyland, which specifically address whether a child is domiciled with his or her parents under the no-fault act. While Dairyland involved a child that had reached the age of majority, I find these factors to be similarly relevant for determining the intent of a minor child’s parents regarding the child’s domicile because they focus on objective indicators of the intent to have the child remain permanently in a given home. Additionally, there are other relevant factors that are unique to the context of minor children whose parents share joint custody: (1) where the child actually spends the majority of his or her time, and (2) where the child actually sleeps the majority of the nights of the week. It bears repeating, however, that none of these domicile factors would alone be determinative.[60]
II. APPLICATION
A. GRANGE INS CO OF MICH v LAWRENCE
Because the underlying facts necessary to determine *538 Josalyn’s domicile at the time of her death are not in dispute, where Josalyn was domiciled is a question of law.[61] In the present case, the judgment of divorce granted joint legal custody to both Lawrence and Ros-inski, but primary physical custody to Rosinski and a significant amount of parenting time to Lawrence. The family court’s judgment demonstrates that it was intended that Josalyn would spend the majority of her time at Rosinski’s residence, and while there was the intent for Josalyn to spend time with Lawrence at his residence, the intent was always for the child to return to Rosinski’s residence. Therefore, under the rule I would establish, the custody determination contained within the judgment of divorce in this case would create a rebuttable presumption that the child was domiciled with Rosinski.
With regard to whether this presumption created by the family court order could be rebutted, I would conclude that it cannot under the facts of this case. Because Rosinski’s residence was identified whenever an address was needed for the child, the little mail Josalyn received would have been sent to this address. The accident report and Josalyn’s death certificate both listed Rosinski’s home as the child’s home. While Lawrence did maintain a room for the children in his apartment, the sisters shared a bed, and the majority of Josalyn’s clothing and her pets were kept at Rosinski’s residence. Josalyn depended on both of her parents for support. The facts also indicate that Josalyn spent the majority of her time and the majority of her overnights at Rosinski’s home. Significantly, both Lawrence and Rosinski indicated that Rosinski’s home was Josalyn’s primary residence, given the ordinary meaning of the phrase. Overall, the facts in this case indicate that *539 Lawrence and Rosinski implemented the custody order and do not demonstrate that Lawrence and Rosinski jointly intended for Lawrence’s residence to be the child’s only domicile. On this basis, I would conclude that the lower courts erred by concluding that Josalyn was domiciled with both Lawrence and Rosinski and that Grange was liable for PIP benefits arising out of Josalyn’s injuries and death.[62]
*540 B. ACIA V STATE FARM MUTUAL AUTO INS CO
The material facts necessary to determine Sarah’s domicile at the time of her death are not in dispute; therefore, where Sarah was domiciled is a question of law.[63] The original judgment of divorce granted physical custody to Campanelli and indicated that the child’s domicile was to be in Michigan. However, Campanelli obtained permission as the custodial parent, by order of the court, to change the child’s domicile to Tennessee. Before the child’s death, an ex parte order from the circuit court purportedly transferred custody of Sarah to Taylor and changed Sarah’s domicile to Taylor’s Michigan address; however, this order was subsequently vacated and declared void ab initio. The judgment of divorce granting physical custody to Campanelli and the subsequent order changing the child’s domicile to Tennessee demonstrate that it was intended that Sarah would spend the majority of her time with Campanelli in Tennessee. While there was the intent for Sarah to leave Tennessee to spend time with Taylor in Michigan, the intent was always for Sarah to return to Tennessee. Therefore, I would conclude that these orders would establish a presumption that Sarah was domiciled in Tennessee with Campanelli.
With regard to whether this presumption could be overcome in this case, the factual situation presented in ACIA is a closer question than the situation presented in Grange. However, as in Grange, I would conclude that the presumption likewise cannot be rebutted under the facts of ACIA. The fact that Sarah stayed in Michigan after her summer break, attended high school in Michigan the following fall, and obtained a part-time job in Michigan, *541 indicates that Sarah used Taylor’s address as her mailing address and on documents. Taylor’s address was also listed as Sarah’s address on Sarah’s hospital records and death certificate. Given the length of Sarah’s stay in Michigan, it can be inferred that she had a significant amount of possessions at Taylor’s Michigan residence. The facts indicate that Sarah had her own room in Michigan and that Taylor provided for Sarah while she was in Michigan. It is also clear that for the period of time that Sarah was staying in Michigan, she actually spent most of her time and overnights in Michigan; however, prior to Sarah coming to Michigan, she spent nearly 11 years in Tennessee with Campanelli, only occasionally visiting Taylor in Michigan. None of the facts in the record suggest that Sarah’s domicile in Tennessee ceased to exist; the facts indicate that Campanelli gave Sarah permission to stay temporarily in Michigan after the summer to attend school in the fall so that Sarah could get to know Taylor better. Campanelli stated, “I did eventually agree that she could stay on a temporary basis and enroll in high school!,]” and further stated, “It was never intended to be permanent....”
The facts in this case are not so clearly inconsistent with the family court’s orders so as to rebut the presumption that domicile is established by the custody order. Absent evidence of a clear joint intent on the part of Sarah’s parents to change Sarah’s domicile, the presumption that Sarah was domiciled in Tennessee would stand. While the facts certainly indicate that there was the intent for Sarah to remain for an extended period of time in Michigan, the facts do not clearly indicate that Sarah’s parents jointly intended for her to remain in Michigan.
In my view, the lower courts improperly focused on Sarah’s intent with regard to her domicile and whether *542 she intended to remain in Michigan or return to Tennessee. While Sarah was an older teen at 16 years old, she was not emancipated. An unemancipated minor child’s intent is not pertinent in determining where the child is domiciled under the no-fault act.[64] The appropriate inquiry instead focuses on whether the child’s parents have reached a joint intent regarding the child’s domicile that differs from the domicile indicated by the family court’s orders.
I would conclude that Sarah was domiciled with Campanelli in Tennessee at the time of her death; therefore, ACIA is not liable for providing PIP benefits for Sarah’s injuries and death.
III. CONCLUSION
Consistent with the majority opinion, I would reaffirm Michigan’s long-standing principle that a person, including a minor child, can have only one domicile. Further, I concur in the majority’s results in these cases. I would reach those results instead by holding that when a minor child has two legal residences pursuant to the Child Custody Act, family court orders relating to custody of the child and the child’s residence(s) create a rebuttable presumption of domicile under the no-fault act. Under the facts of these cases, the presumptions in these cases would not be rebutted.
Markman and McCormack, JJ., concurred with Zahra, J.

 MCL 722.21 et seq.

 The majority is equating physical custody with domicile by operation of law, despite the fact that a child whose parents share, at a minimum, joint legal custody has a legal residence with each parent. While in the overwhelming number of cases it may turn out that a child’s domicile is the same as that indicated by the custody order, in my view, a custody order does not have the effect of creating domicile, instead it creates the custodial environment from which domicile can he established. See part 1(C).

 MCL 500.3114(1) (emphasis added).

 Notwithstanding all the good intentions behind a court order establishingjoint custody, the reality remains that there is but one domicile for a minor child. As explained more fully in this opinion, see part 1(F), factors such as where the child goes to school, where the majority of the child’s belongings are kept, and the address used to register the child for functions will assist a fact-finder in making a domicile determination.

 See, e.g., People v Dowdy, 489 Mich 373, 376; 802 NW2d 239 (2011) (addressing “whether homeless sex offenders have a ‘residence’ or ‘domicile’ such that they can comply” with the Sex Offenders Registration Act); In re Servaas, 484 Mich 634, 642; 774 NW2d 46 (2009) (discussing Const 1963, art 6, § 20, which requires a judge or justice to vacate his or her office if he or she “removes his domicile beyond the limits of the territory from which he was elected or appointed . . ..”).

 See In re High, 2 Doug 515, 522 (1847) (“It may be laid down as a settled maxim that every man must have such a national domicile somewhere.”).

 Id.

 Dowdy, 489 Mich at 385, quoting Hartzler v Radeka, 265 Mich 451, 452; 251 NW 554 (1933).

 As stated by this Court in In re High, 2 Doug at 523-524:
[Domicile] is always that place which has more of the qualities of a principal or permanent residence, and more pretensions to be considered as such, than any other place. Two things, it is said, must concur to constitute domicile. First, residence, which however is not indispensable to retain domicile after it has been once acquired; and, secondly, intention of making it the home of the party: Story’s Confl. Laws, § 44. The question of domicile, is then, a question of fact and intent, and if these elements are found, the reference of the domicile to one place or another depends upon the comparative weight of the circumstances. In the language of the chief justice, in Abington v. North Bridgewater, 23 Pick., 178, “it depends, not upon proving particular facts, but whether all the facts and circumstances taken together, tending to show that a man has his home or domicile in one place, overbalance all the like proofs tending to establish it in another.

 8 Mich Civ Jur, Domicile, § 1.

 Miss Band of Choctaw Indians v Holyfield, 490 US 30, 48; 109 S Ct 1597; 104 L Ed 2d 29 (1996) (citations omitted).

 8 Mich Civ Jur, Domicile, § 5.

 Miss Band of Choctaw Indians, 490 US at 48. See 8 Mich Civ Jur, Domicile, § 21 (“Everyone is assigned a domicile of origin at birth by operation of law.”) (emphasis added). But note, when a minor child has been emancipated, he or she may establish a domicile by choice. See MCL 722.4e(1)(d), which provides: “A minor emancipated by operation of law or by court order shall be considered to have the rights and responsibilities of an adult.... A minor shall be considered emancipated for the purposes of, but not limited to,.. . [t]he right to establish a separate domicile.”

 Specifically, “[t]he domicile] of origin is the domicilie] which a person has at birth[,]” and “[t]he domicilie] of a legitimate child at birth is the domicilie] of its father at that time, subject to the rule stated in § 22 pertaining to divorce or separation of the parents. If the child is not the legitimate child of its father, or is born after the father’s death, its domicile at birth is the domicilie] of its mother at that time.” Restatement Conflict of Laws, 2d, § 14(2), p 59. The domicile of origin “continues until a new domicile is acquired.” Id. at comment b.

 See Hering v Mosher, 144 Mich 152, 154, 155; 107 NW 917 (1906), in which this Court stated, “We accept the doctrine, as a general proposition, that the domicile of a child is that of its origin, or of its last surviving parentE,]” and “If [the child’s father] gained a domicile [in Wayne County], conceding the general rule to apply, it became in law the domicile of this child.” This Court also recognized in Hering that “[a] parent may give his child domicile different from his own by consenting to its adoption; that he may do so by less formal proceedings we consider equally permissible.” Id. at 156.

 Even when a family court order awards physical custody primarily or exclusively to one parent, the Legislature has determined that where joint legal custody exists, the minor child has a legal residence with each parent. MCL 722.31. See also part I(C).

 See part I(E).

 Workman v Detroit Auto Inter-Ins Exch, 404 Mich 477, 496; 274 NW2d 373 (1979).

 Id. at 496-497 (citations omitted).

 Dairyland Ins Co v Auto-Owners Ins Co, 123 Mich App 675, 681; 333 NW2d 322 (1983).

 See, e.g., Fowler v Auto Club Ins Ass’n, 254 Mich App 362; 656 NW2d 856 (2002); Goldstein v Progressive Cas Ins Co, 218 Mich App 105; 553 NW2d 353 (1996) (noting that the injured child, who was a student attending college out of state from his parents’ residence, with no specific age provided, was domiciled with his parents, not at the college).

 Dairyland, 123 Mich App at 682.

 MCL 722.31(1).

 MCL 722.27.

 MCL 722.27(1)(a).

 MCL 722.26a.

 MCL 722.26a(7).

 Dailey v Kloenhamer, 291 Mich App 660, 670; 811 NW2d 501 (2011).

 MCL 722.26a(7)(a).

 MCL 722.31 provides, in part:
(1) A child whose parental custody is governed by court order has, for the purposes of this section, a legal residence with each parent. Except as otherwise provided in this section, a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child’s legal residence at the time of the commencement of the action in which the order is issued.
(2) A parent’s change of a child’s legal residence is not restricted by subsection (1) if the other parent consents to, or if the court... permits, the residence change. This section does not apply if the order governing the child’s custody grants sole legal custody to 1 of the child’s parents....
*526 Actions of a parent pursuant to MCL 722.31 are commonly referred to as petitions to change domicile, despite MCL 722.31’s use of the term “residence.” See, e.g., McKimmy v Melling, 291 Mich App 577, 580-582; 805 NW2d 615 (2011) (discussing change of domicile and change of legal residence interchangeably). It is significant that while the Legislature chose to focus on “legal residence,” some practitioners and courts apparently colloquially use the term “domicile.”

 Dowdy, 489 Mich at 385; In re High, 2 Doug at 522.

 Workman, 404 Mich at 495 (stating “the terms ‘domicile’ and ‘residence’ are legally synonymous”).

 Ante at 498.

 Gluc v Klein, 226 Mich 175, 177-178; 197 NW 691 (1924) (emphasis added).

 See, e.g., Dowdy, 489 Mich at 382, where this Court noted that the Legislature chose to define the word “residence” as used in the Sex Offender Registry Act to mean
that place at which a person habitually sleeps, keeps his or her personal effects, and has a regular place of lodging. If a person has more than 1 residence, or if a wife has a residence separate from that of the husband, that place at which the person resides the greater part of the time shall he his or her official residence for purposes of this act. [Quotation marks and citation omitted.]

 Miss Band of Choctaw Indians, 490 US at 48.

 MCL 722.31(1). The general rule is that “[a] child’s domicile, in the case of the divorce or separation of his parents, is the same as that of the parent to whose custody he has been legally given.” Restatement Conflicts of Laws, 2d, § 22, comment d. However, this rule is unhelpful where legal custody has been given jointly to both parents. See also In re Volk, 254 Mich 25, 32; 235 NW 854 (1931), overruled in part on other grounds by Hentz v Hentz, 371 Mich 335 (1963), in which this Court concluded that a child whose mother was given unrestricted custody of her minor child pursuant to a judgment of divorce was domiciled with the child’s mother, quoting 9 RCL, p 549, which stated, “When a divorce has been granted to the wife, however, and unrestricted custody of the minor child of the marriage given her in the decree, her own domicile, and not the father’s, establishes that of the child.” However, in the cases at issue, unlike Volk, the parents shared joint legal custody. Neither parent in either of the present cases was granted unrestricted custody, as in Volk. Therefore, I question the majority’s reliance on this case.

 In re High, 2 Doug at 522-523.

 Ante at 493, quoting In re High, 2 Doug at 523.

 See In re High, 2 Doug at 522 (“[Domicile] is always that place which has more of the qualities of a principal or permanent residence, and more pretensions to be considered as such, than any other place.”).

 See Titan Ins Co v Hyten, 491 Mich 547, 570; 817 NW2d 562 (2012) (reaffirming the principle that “an insurer has no duty to investigate or verify the representations of a potential insured”).

 Footnote 77 of the majority’s opinion, which indicates that in situations of joint legal and physical custody, domicile would alternate consistent with the family court’s orders, is particularly troubling in this regard.

 MCL 500.3114(1). Emphasis added.

 Take, for example, the following hypothetical: A Michigan couple gets divorced, and the mother and the father are awarded joint legal custody of the couple’s three-year-old daughter, but mother is awarded sole physical custody. The father moves to Florida because he cannot find work in Michigan. Ultimately, after several months, the mother decides she does not want to raise the young child, discusses this with the father, and the child is sent to live with the father in Florida. The mother and the father do not go back to court to seek a change in custody in either state. The child gets into a car accident at the age of 16 in Florida. Under the majority’s rule, the child would be domiciled in Michigan, despite living for nearly 13 years in Florida under the exclusive care of her father.

 MCL 722.27; MCL 722.31.

 See In re High, 2 Doug at 522-523.

 Workman, 404 Mich at 496.

 Kirby v Mich High Sch Athletic Ass’n, 459 Mich 23, 40; 585 NW2d 290 (1998).

 See the discussion of presumptions in Johnson v Secretary of State, 406 Mich 420, 432; 280 NW2d 9 (1979), where this Court noted:
*532 The burden of producing evidence is not invariably allocated to the pleader of the fact to be proved. That burden may be otherwise allocated by the Legislature or judicial decision based, among other factors, on an estimate of the probabilities, fairness and special policy considerations, and similar concerns may justify the creation, judicially or by law, of a presumption to aid the party who has the burden of production.
See also Juvelis v Snider, 68 F3d 648, 651, 657 (CA 3, 1995) (permitting the domicile by operation of law conclusion that a “profoundly retarded and physically handicapped 33 year old” is domiciled where his parents were domiciled to be rebutted by (1) “several objective factors that support the conclusion” that the man had “established a domicile in Pennsylvania,” (2) the man’s expressed “subjective attachment” to his residence, “within his limited ability to” express such an attachment, and (3) the fact that his parents acted in good faith and in the man’s best interest by asserting that the man was domiciled at the residential home in Pennsylvania).

 See MCL 722.27(1); MCL 722.31(2).

 This Court held in Harvey v Harvey, 470 Mich 186, 194; 680 NW2d 835 (2004), that parties cannot “limit the trial court’s authority to review custody determinations” by stipulation to a particular custody arrangement. There is no question that if a custody or legal-residence matter came before the family court, the family court alone is charged with making determinations in the child’s best interests, and stipulation by the parties to an alternative custody arrangement cannot usurp that authority. However, this is not the situation in the cases currently before this Court; the situation in question is one in which parents, after the entry of a court order regarding custody or legal residence, have not sought the family court’s subsequent intervention and have amicably chosen, despite the binding legal nature of the orders, to act in contravention of a family court’s orders. See also Phillips v Jordan, 241 Mich App 17, 23-24; 614 NW2d 183 (2000) (holding that the trial court properly set aside a stipulated custody order where “the trial court entered the stipulated order to change custody without making any independent determination regarding the best interests of the child pursuant to the Child Custody Act”).

 MCL 722.31(2).

 MCL 722.27(1)(e) provides, in part:
If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may]...
(c) Modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances until the child
*534 reaches 18 years of age and, subject to section 5b of the support and parenting time enforcement act, 1982 PA 295, MCL 552.605b, until the child reaches 19 years and 6 months of age. The court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child.

 When family court orders exist, they are, in my view, central to determining the domicile of a minor child in the no-fault context. But domicile determinations in no-fault decisions have no effect in family court adjudications regarding a child’s custody and legal residence. Family courts are charged with making determinations that focus on the best interests of the child. See MCL 722.27(1) (“If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following!.]”) (emphasis added); see also MCL 722.31(4) (“Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, with the child as the primary focus in the court’s deliberations!.]”) (emphasis added); Gagnon v Glowacki, 295 Mich App 557, 570; 815 NW2d 141 (2012) (“After granting a change of domicile, the trial court must determine whether there will be a change in the established custodial environment and, if so, determine whether the relocating parent can prove, by clear and convincing evidence, that the change is in the child’s best interest.”) (emphasis added). No-fault decisions regarding insurer priority on the basis of domicile determinations are inapposite to custody and legal residence determinations in the *535 family court context because no-fault law focuses on the practical issue of which insurer is liable for insurance coverage and does not take into consideration the best interests of the child. Again, I question whether the family court has the authority under the Child Custody Act to explicitly set a child’s domicile, as opposed to establishing the custodial environment in which the child will live.

 The majority approach fails to recognize that a court order may allow parents to modify the time a child spends with each parent. For example, in Grange the custody order provides:
IT IS FURTHER ORDERED that the Defendant, EDWARD BLAINE LAWRENCE, shall have rights of parenting time with the minor child at the following times:
1. Alternating weekends from Friday at 6p.m. until Sunday at 6 p.m.;
2. Every Wednesday from 4:30 p.m. until 7:30 p.m.[;]
3. Alternating Holidays by mutual agreement. .. ;
4. Any other reasonable times that the parties may agree to[.] [Emphasis added.]
Under this provision of the order, the parents were free to alter the child’s living arrangements such that the father could be primarily responsible for the physical custody of the child. The majority would ignore a subsequent decision by the parents to make the father the new primary custodian in fact, reasoning that such changes only alter parenting time and not the domicile. For the reasons stated in this opinion, we believe the better approach is to make domicile determinations on the basis of the actual living situation of the child.

 It is important to note that while “physical custody” is a term commonly associated with the custody described in MCL 722.26a(7)(a), this phrase is not defined in the Child Custody Act. However, MCL 722.1102(n), a provision of the Uniform Child-Custody Jurisdiction and Enforcement Act, defines “physical custody” as “the physical care and supervision of a child.”

 See Citizens Mut Ins Co v Community Servs Ins, 65 Mich App 731, 733; 238 NW2d 182 (1975) (“There is reason for limiting insurance benefits to any relative of the insured or his spouse to those relatives domiciled in the insured’s household. It creates a definite limit to the exposure of the insurer, an essential factor in determining the insurance premium.") (emphasis added); but see Bierbusse v Farmers Ins Group of Cos, 84 Mich App 34, 36-38; 269 NW2d 297 (1978) (declining to follow the “hard and fast rule set forth in Citizens Mutual” because doing so would deny relief to the plaintiff daughter, holding, “When a couple is separated pending divorce and one spouse is the named insured on a no-fault policy, the other spouse and the children of the named insured are covered by the no-fault policy, even though they are domiciled in separate households, until the divorce is finalized.”). The Court of Appeals in Bierbusse also stated, “While agreeing that the statute should be interpreted in a manner that allows an insurer to reasonably calculate the scope of risk and the premium incidental thereto, we do not believe that a per se rule excluding from coverage any relative not domiciled in the same household as the named insured is in accord with the legislative intent.” Id. at 37 (emphasis added).

 Workman, 404 Mich at 496-497; In re High, 2 Doug at 523.

 The rule I propose is consistent with this Court’s decision in Volk in which the child was determined to be domiciled with the child’s mother where the mother was given unrestricted custody. Under my rule, just as under the majority rule, a child whose mother or father is given sole legal and physical custody, i.e., where one parent has unrestricted custody, is domiciled with that parent because there is only one legal residence that can constitute the child’s domicile.
*537 Further, I note that in Vanguard Insurance Co v Racine, 224 Mich App 229, 233; 568 NW2d 156 (1997), the Court of Appeals stated that a person has one domicile and concluded that the child at issue “would be” domiciled with the child’s mother because the mother’s home “was where [the child] spent the majority of his time and where [the child’s mother] had physical custody of [the child] under the divorce judgment.” However, I note that the Court of Appeals made this statement without fully analyzing this issue and without providing authority to support its conclusion. Additionally, this statement of the Court of Appeals cannot fairly he interpreted as indicating that the court considered the custody determination in the judgment of divorce to be conclusive of domicile, given that the court, in the same breath, pointed to where the child spent the majority of his time.

 Workman, 404 Mich at 496.

 See Fowler, 254 Mich App at 364.

 In our grant order, this Court asked the parties to address in part “whether an insurance policy provision giving preclusive effect to a court-ordered custody arrangement is enforceable.” Grange Ins Co of Mich v Lawrence, 493 Mich 851 (2012). For the reasons set forth in this opinion, I agree with the majority that Grange is entitled to summary disposition. Nonetheless, under my rule, I would conclude that a portion of the Grange policy may be invalid.
“To the degree that [a policy] is in conflict with the [no-fault] statute, it is contrary to public policy and, therefore, invalid.” Cruz v State Farm Mut Auto Ins Co, 466 Mich 588, 601; 648 NW2d 591 (2002). Regarding PIP benefits, the Grange policy defined a covered “insured,” in pertinent part, as “any family member,” which in turn was defined as:
[A] person related to you by blood, marriage or adoption and whose principal residence is at the location shown on the Declarations Page. If a court has adjudicated that one parent is the custodial parent, that adjudication shall be conclusive with respect to the minor child’s principal residence. [Emphasis added.]
The issue is whether, under my rule, the italicized portion of this definition would violate the no-fault act, which provides for PIP benefits for relatives of an insured, who, in relevant part, are a “relative of [a person named in the policy or the person’s spouse] domiciled in the same household . . . .” MCL 500.3114(1) (emphasis added).
It is clear from the policy’s choice of the phrase “principal residence” that Grange anticipated the factual dilemma that arose in this case: a child of divorced parents with two legal residences under Michigan law. The policy’s statement that a court adjudication regarding custody is conclusive constitutes Grange’s attempt to close what it saw as a potential gap in the no-fault act that could have been interpreted to expand Grange’s liability. Because a minor child of divorced parents could have two legal residences, Grange recognized that it was not entirely clear under Michigan law whether such a child could likewise have two domiciles for purposes of PIP benefits *540 pursuant to MCL 500.3114(1). However, because Grange’s policy makes custody orders conclusive of domicile, the policy would conflict with the rule I have proposed in this opinion.

 See Fowler, 254 Mich App at 364.

 See Miss Band of Choctaw Indians, 490 US at 48; MCL 722.4e(1)(d). I recognize that a child’s preference is considered by the family court in certain circumstances. See MCL 722.23(i) (listing “[t]he reasonable preference of the child, if the court considers the child to be of sufficient age to express preference!),]” as a factor in the best-interest-of-the-child determinations). However, I would distinguish that the intent of the child is not pertinent for purposes of determining domicile under the no-fault act.