# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES STANLEY BALLY,

Defendant-Appellant.

UNPUBLISHED
July 9, 2015

No. 320838
Wayne Circuit Court
LC No. 13-008334-FH

Before: METER, P.J., and CAVANAGH and WILDER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of making a terrorist threat or false report of terrorism ("threat or false report of terrorism"), MCL 750.543m, felon in possession of a firearm ("felon-in-possession"), MCL 750.224f, carrying a concealed weapon ("CCW"), MCL 750.227, possession of a dangerous weapon, MCL 750.224(1)(a), and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. The trial court sentenced defendant, as a second habitual offender, MCL 769.10, to 6 to 30 years' imprisonment for the threat or false report of terrorism conviction, 1 to 7 ½ years' imprisonment for the felon-in-possession, CCW, and possession of a dangerous weapon convictions, and 2 years' imprisonment for the felony-firearm conviction. We affirm.

I

This case arises from a threat communicated to Daniel Thompson, an employee at a Meijer store in Livonia, Michigan, during the early morning hours of August 31, 2013. Thompson was working the midnight shift as a greeter on that date. At approximately 1:30 a.m., defendant entered the store and began a conversation with Thompson. Defendant initially seemed like an ordinary customer; he was friendly and discussed the price of the store's produce with Thompson. But as the conversation continued, defendant revealed that he had recently attempted suicide by placing a gun against his head but discharging the weapon at the floor. Defendant told Thompson that he liked the sound of the gunshot. Another customer walked by—a large man who "looked like a football player"—and Thompson said, "Let's step aside." Defendant replied that he was not afraid of the large man.

Thompson further testified that defendant said that he had applied for a job at the store twice, but he was not hired. Defendant mentioned several store managers by name. He told Thompson that he had been imprisoned for 14 years for a felony conviction involving sex with a

-1-

minor, and that he was homeless. Suddenly, defendant's demeanor changed, and he told Thompson that "he was going to come back and he was going to shoot somebody, one person," and then shoot himself. Defendant walked towards the exit, but he paused to turn around and tell Thompson that he would be back.

The police were summoned and located defendant in the store parking lot, asleep in a car. Defendant consented to a search of the vehicle and numerous weapons, including firearms, were found.

On the first day of trial, before jury selection commenced, the trial court entertained defendant's motion in limine to preclude Thompson from testifying that defendant told him he had been convicted of a sex offense, on the basis that any probative value was far outweighed by the prejudicial effect of such testimony. The trial court ruled that the testimony was admissible, reasoning that it was necessary proof regarding defendant's intent to intimidate for the threat or false report of terrorism charge. Later, during trial, defense counsel stipulated to the admission of "an order of conviction and sentence showing [that] defendant has been previously convicted of . . . two counts of criminal sexual conduct in the third degree." No limiting instruction was requested or given. Defense counsel also mentioned that defendant was a registered sex offender during his closing argument.

Defendant also personally addressed the trial court on the first day of trial, requesting an adjournment and new appointed counsel. Defendant stated that his appointed attorney was a good attorney but had only visited him once—the night before trial—and had failed to respond to defendant's communications. Defendant also said that he had been unaware that his trial was scheduled to begin until the night beforehand. Furthermore, defendant argued that he was unprepared for trial and was having medical issues that made him unfit to stand trial. The trial court asked defendant's trial counsel to respond, and defense counsel stated that he had spoken with defendant on several occasions, that he was prepared to go to trial, and that defendant had requested the filing of motions that counsel found frivolous. The trial court denied defendant's motion for new counsel and an adjournment, finding in part that defendant had been present at several pretrial hearings during which he was notified that trial was scheduled to begin on that date.

II

Defendant first argues that the evidence proffered at his jury trial was insufficient to prove the intent required to support his conviction of making a terrorist threat or false report of terrorism. We disagree.

This Court reviews the sufficiency of the evidence presented during a jury trial de novo, "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The reviewing "court must 'draw all reasonable inferences and make credibility choices in support of the [] verdict.' " *People v Cameron*, 291 Mich App 599, 613; 806 NW2d 371 (2011) (quoting *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000)).

"Issues of statutory construction are questions of law that are reviewed de novo." *People v Dowdy*, 489 Mich 373, 379; 802 NW2d 239 (2011). "The cardinal rule of statutory construction is to discern and give effect to the intent of the Legislature." *Id.* at 379 (quotation marks and citation omitted). Where statutory language is unambiguous, "the Legislature is presumed to have intended the meaning it plainly expressed," and further judicial construction is neither required nor permitted. *People v Stone*, 463 Mich 558, 562; 621 NW2d 702 (2001).

In pertinent part, MCL 750.543m provides:

(1) A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:

(a) Threatens to commit an act of terrorism and communicates the threat to any other person.

(b) Knowingly makes a false report of an act of terrorism and communicates the false report to any other person, knowing the report is false.

(2) It is not a defense to a prosecution under this section that the defendant did not have the intent or capability of committing the act of terrorism.

As discussed in *People v Osantowski*, 274 Mich App 593, 603; 736 NW2d 289 (2007), rev'd in part on other grounds 481 Mich 103 (2008):

. . . MCL 750.543m(1)(a) criminalizes the "making [of] a terrorist threat" by threatening to "commit an act of terrorism" and the communication of that "threat to any other person." An "act of terrorism" is defined as a "willful and deliberate act" that would comprise a "violent felony," known to be "dangerous to human life," and that "is intended to intimidate or coerce a civilian population or influence or affect the conduct of government . . . through intimidation or coercion." MCL 750.543b(a). Given the plain and ordinary meaning of these terms, we are satisfied that the statutory provisions, when read together, prohibit only "true threats," as they encompass the communication of a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals . . . . Further, because the statutes require the existence of an intent to "intimidate or coerce," they extend beyond the type of speech or expressive conduct that is afforded protection by the First Amendment.

The phrase "civilian population" is not defined in the statute.

Defendant, arguing that the phrase "civilian population" must be given its ordinary meaning, contends that the dictionary definition of the word "population" supports a statutory construction requiring a threat against more than one person, such that he lacked the requisite intent for the offense because his threat was not directed at more than one person. However, it is not necessary to consider a dictionary definition in this case because the meaning of "civilian population" can be determined from the statutory text alone. *Stone*, 463 Mich at 563 ("[R]ecourse to dictionary definitions is unnecessary when the Legislature's intent can be determined from reading the statute itself."). Within MCL 750.543b(a)(*iii*), the phrase "civilian

-3-

population" is disjunctively separated from the other phrases: "An act that is intended to intimidate or coerce a civilian population *or* influence or affect the conduct of government or a unit of government through intimidation or coercion." (Emphasis added.) Accordingly, in the context of the statute, it is apparent that the phrase "civilian population" is differentiated from both government and units of government and refers to a nongovernmental group of people. Thus, the proper construction of the phrase "civilian population" can be discerned through the plain meaning of those words in their statutory context.

Additionally, defendant's argument is unconvincing. Defendant communicated a threat of violence to Thompson, telling him that he was going to come back to the store and kill one person before committing suicide. A threat communicated to only *one* person can nevertheless be a threat of violence against a *group* of people. See, e.g., *Osantowski*, 274 Mich App at 595-600, 612-613 (holding that a Michigan defendant's threat of terrorism at his high school communicated to one person in Washington State in an online chat room was sufficient evidence for a threat or false report of terrorism conviction). Likewise, defendant's threat was, in fact, a threat against a group of people, and that group constituted a civilian population. Defendant did not threaten a specific person—he simply said he would kill "one person" in the store. A threat to kill *someone* out of a group is reasonably understood as a threat against the entire group. The fact that defendant listed the names of several store employees during his conversation with Thompson highlights that his threat to kill one person could reasonably be construed as directed at any of these people from the group.

Furthermore, sufficient evidence existed for a rational trier of fact to conclude that defendant's threat was intended to "intimidate or coerce" the people in the store. MCL 570.543b(a)(*iii*); *Osantowski*, 274 Mich App at 603. Without any evidence of provocation, defendant threatened to kill one person in the store before killing himself. On the way out of the store, defendant stopped and turned back to reinforce his seriousness, stating again that he would return. Thompson believed the threat because defendant's demeanor changed as he made the threat; defendant was suddenly angry and seemed to want to inflict pain on others. Likewise, defendant made comments to Thompson that could have reasonably been interpreted as statements intended to show how "tough" or "dangerous" he was, as he stated that he was unafraid of a large man in the store, that he had previously served a long prison sentence for having sex with a minor, and that he liked the sound of gunfire. Drawing all reasonable inferences in favor of the jury's verdict, *Cameron*, 291 Mich App at 613, the evidence was sufficient for a rational trier of fact to conclude that defendant communicated a threat to Thompson that consisted of an act intended to intimidate or coerce a civilian population, *Gaines*, 306 Mich App at 296.

III

Defendant next contends that the trial court erred in admitting testimony that, while making his threat, defendant admitted to Thompson that he had previously been convicted of a felony involving sex with a minor. Defendant argues that, pursuant to MRE 403, any probative

value of that testimony was substantially outweighed by the danger of unfair prejudice.[1]  We disagree.

This Court reviews "a trial court's ruling on the admission of evidence for an abuse of discretion," but preliminary legal issues regarding the admissibility of evidence are reviewed de novo.  *People v Wood*, 307 Mich App 485, 500; 862 NW2d 7 (2014).  Reversal of a criminal conviction on the basis of a trial court's erroneous evidentiary ruling is only warranted where the error prejudiced the defendant by resulting in a miscarriage of justice.  *People v Snyder* (*After Remand*), 301 Mich App 99, 111; 835 NW2d 608 (2013) (discussing MCL 769.26).  Likewise, "a trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion."  *Cameron*, 291 Mich App at 608 (quotation marks and citation omitted).

In pertinent part, MRE 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  When balancing the probative value of evidence of prior bad acts against the danger of unfair prejudice from such evidence, a court must be cognizant that evidence of a propensity to commit crimes is "prejudicial by nature."  *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012).  However, MRE 403 "does not prohibit prejudicial evidence; only evidence that is unfairly so."  *People v Crawford*, 458 Mich 376, 398; 582 NW2d 785 (1998).  "Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury."  *Id.*

Although we are mindful that evidence of a prior bad act is "prejudicial by nature," *Watkins*, 491 Mich at 486, the prosecution sought admission of the testimony in support of an essential element of the threat or false report of terrorism offense: intent.  The prosecution's theory of the case was that defendant's admission that he was a convicted sex offender was part of a series of comments specifically intended to intimidate or coerce by proving that defendant was "tough" or "dangerous."  Thus, while prejudicial, the evidence was also probative of a contested element of the threat or false report of terrorism offense.  Additionally, given the significant difference between the nature of a threat or false report of terrorism offense and a criminal sexual conduct conviction, there was less risk that the jury would draw a propensity inference.  See *Crawford*, 458 Mich at 398 ("When a juror learns that a defendant has *previously committed the same crime* as that for which he is on trial, the risk is severe that the juror will use the evidence precisely for the purpose that it may not be considered, that is, as suggesting that the defendant is a bad person, a convicted criminal, and that if he 'did it before he probably did it again.' " [Emphasis added; citation omitted.]).  Therefore, we find no abuse of discretion in the trial court's ruling.

IV

Finally, defendant argues that the trial court abused its discretion when it denied defendant's motion to adjourn his trial, which was made on the day that trial was scheduled to begin.  We disagree.

---

[1] We note that defendant does not argue that the evidence was inadmissible under MRE 404(b).

This Court reviews a trial court's denial of a motion to adjourn for an abuse of discretion. *People v Steele*, 283 Mich App 472, 484; 769 NW2d 256 (2009). An abuse of discretion occurs when the decision of the lower court "falls outside the range of reasonable and principled outcomes." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (quotation marks and citation omitted).

"[T]o invoke the trial court's discretion to grant a continuance or adjournment, a defendant must show both good cause and diligence." *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). Factors demonstrating "good cause" include (1) whether the defendant was asserting a constitutional right in requesting an adjournment; (2) whether the defendant had a legitimate reason for asserting that right, such as a genuine dispute with counsel over an important trial tactic; (3) whether the defendant's negligence contributed to the need for an adjournment; and (4) whether the defendant contributed to other delays or adjournments. *Id*. at 18; see also *People v Williams*, 386 Mich 565, 578; 194 NW2d 337 (1972) (setting forth the four factors). Even if a defendant demonstrates good cause and due diligence, a trial court's denial of the defendant's request for an adjournment does not warrant reversal unless the defendant demonstrates prejudice resulting from the trial court's abuse of discretion. *Coy*, 258 Mich App at 18-19.

Defendant's request for an adjournment involved his constitutional rights: he argued that he was unfit to stand trial and that his appointed counsel was unprepared, thereby asserting his right to a fair trial and right to counsel. Additionally, the record indicates that defendant requested no other adjournments. However, the record does not support defendant's assertion that he had a legitimate reason to be concerned about his counsel's preparation for trial. Defense counsel indicated that he was prepared and had reviewed motions that defendant drafted, finding them to be frivolous. The trial court agreed with defense counsel's assessment, stating that the motions were, indeed, frivolous.

Furthermore, defendant's negligence contributed to his need for an adjournment. Defendant claimed that he was unaware that his trial was scheduled to begin that day, but the record demonstrates that defendant was informed of the trial date months in advance. Nevertheless, defendant waited until the first day of trial to inform the trial court of his attorney's alleged neglect and defendant's own lack of preparation. Thus, the trial court did not abuse its discretion in denying defendant's motion for an adjournment, as its ruling did not fall outside the range of reasonable and principled outcomes.

Moreover, even if the trial court abused its discretion by denying defendant's request for an adjournment, defendant has failed to demonstrate that he was prejudiced as a result. *Id*. at 18. On appeal, defendant baldly asserts that he was prejudiced because he was ill during trial and unprepared, but he presents no evidence indicating that he was prejudiced by his physical condition and his own lack of preparation. Similarly, the record contains no indication that defendant was otherwise prejudiced by the trial court's unwillingness to grant an adjournment. Thus, this claim of error necessarily fails.

Affirmed.

/s/ Patrick M. Meter
/s/ Mark J. Cavanagh
/s/ Kurtis T. Wilder